**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK E. MURPHY and<br>PAMELA S. MURPHY, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No. 08 CV 03293 |
| | ) | |
| VILLAGE OF PLAINFIELD, a municipal | ) | |
| corporation, PLAINFIELD TOWNSHIP, | ) | |
| PLAINFIELD PARK DISTRICT, GREG | ) | |
| BOTT and MEYERS, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**THE VILLAGE OF PLAINFIELD AND JOAN MEYER'S
RULE 12(b)(6) MOTION TO DISMISS**

NOW COMES the Defendants, JOAN MEYERS, individually, and the VILLAGE, by and

through its attorneys, McKEOWN, FITZGERALD, ZOLLNER, BUCK, HUTCHISON &

RUTTLE, and hereby requests that this Honorable Court dismiss Plaintiffs' Amended Complaint

(hereinafter referred to as "Complaint") against them in the above-captioned matter.  In support

of his Motion, the Defendants state as follows:

**I.  COUNT I – NEGLIGENT TRESPASS**

    **A.  THE VILLAGE IS ENTITLED TO ABSOLUTE IMMUNITY PURSUANT TO 745
    ILCS 10/2-104.**

Section 2-104 of the Tort Immunity Act states as follows:

A local public entity is not liable for an injury caused by the issuance, denial,
suspension or revocation of, or by the failure or refusal to issue, deny, suspend or
revoke, any permit, license, certificate, *approval, order or similar authorization*
where the entity or its employee is authorized by enactment to determine whether
or not such authorization should be issued, denied, suspended or revoked.

745 ILCS 10/2-104.  In the instant case, Plaintiffs attempt to hold the VILLAGE liable for

injuries they allege they have incurred as a result of the VILLAGE's approval of subdivision

developments, such as Vintage Harvest and Spangler. (Complaint, Count I, Paragraphs 6 and 12). The Village of Plainfield Planning Commission has authority pursuant to the enactment of the Village of Plainfield Ordinance Code to determine whether or not to issue the authorization/approval of a subdivision development with the Village. Plainfield, IL., Ord No. 2091, §3-1-3 (2002). Furthermore, the Village of Plainfield Ordinance Code also dictates that "[n]o land shall…be subdivided…nor any street laid out, nor any improvements made to the land, until the plat or plats of subdivision or street improvements shall have been certified and approved by action of the board of trustees of the village." Plainfield, IL., Ord No. 2091, §3-2-1 (2002).

From these references, it is clear that the Village Board has been authorized by enactment to issue the approval of a subdivision development. Therefore, pursuant to section 2-104 of the Tort Immunity Act, the local public entity (i.e. Village of Plainfield) is entitled to *absolute immunity* for any injury caused by such issuance (*O'Malley v. Village of Palos Park*, 346 Ill.App.3d 567, 583, 805 N.E.2d 308, 321 (1st Dist. 2004)), including the claims of the Plaintiffs' in this case.

As such, the VILLAGE requests this Court dismiss Count I of the Complaint.

## B. THE VILLAGE IS ENTITLED TO DISCRETIONARY IMMUNITY PURSUANT TO 745 ILCS 10/2-109 AND 745 ILCS 10/2-201.

The Illinois Local Governmental and Governmental Employees Tort Immunity Act (hereinafter referred to as the "Tort Immunity Act") governs whether and in what situations local governmental units are immune from civil liability. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill.2d 335, 340 (1998). The Courts' primary goal is to ascertain and give effect to the intention of the legislature. Id. Courts will not depart from the plain language of the Act

by reading into it exceptions, limitations, or conditions that conflict with the express legislative

intent. Id.

Pursuant to sections 2-201 and 2-109 of the Tort Immunity Act, The VILLAGE is

entitled to discretionary immunity. 745 ILCS 10/2-201, 745 ILCS 10/2-109. Sections 2-109 and

2-201 of the Act grant immunity to public entities for the performance of discretionary functions.

*In re Chicago Flood Litigation,* 176 Ill.2d 179, 193 (1997). Section 2-109 of the Act states "A

local public entity is not liable for an injury resulting from an act or omission of its employee

where the employee is not liable." 745 ILCS 10/2-109. Furthermore, section 2-201 of the Act

states:

> Except as otherwise provided by Statute, a public employee serving in a position
> involving the determination of policy or the exercise of discretion is not liable for
> an injury resulting from his act or omission in determining policy when acting in
> the exercise of such discretion *even though abused.*

745 ILCS 10/2-201 (emphasis added).

The Illinois Supreme Court recognized that, at common law, a municipality is afforded

immunity from liability for the performance of discretionary acts, but is not immune for the

performance of ministerial tasks. *In re Chicago Flood Litigation,* 176 Ill.2d at 193-94. In

discussing the doctrine, the Court stated:

> It is well settled, that municipal corporations have certain powers which are
> discretionary or judicial in character, and certain powers which are ministerial.
> Municipal corporations will not be held liable in damages for the manner in which
> they exercise, in good faith, their discretionary powers of a public, or legislative,
> or *quasi* judicial character. But they are liable to actions for damages when their
> duties cease to be judicial in their nature, and become ministerial. *Official action
> is judicial where it is the result of judgment or discretion.* Official duty is
> ministerial, when it is absolute, certain and imperative, involving merely the
> execution of a set task, and when the law which imposes it, prescribes and defines
> the time, mode and occasion of its performance with such certainty, that *nothing
> remains* for judgment or discretion. *A corporation acts judicially, or exercises
> discretion, when it selects and adopts a plan in the making of public
> improvements, such as constructing sewers or drains;* but as soon as it begins to

carry out that plan, it acts ministerially, and is bound to see that the work is done in a reasonably safe and skillful manner."

*In re Chicago Flood Litigation*, 176 Ill.2d 179, 194, 680 N.E.2d 265, 272-273 (1997) (emphasis added).

In the instant case, Count I of Complaint alleges negligent trespass against the VILLAGE. Pinpointing the specific conduct by the VILLAGE OF PLAINFIELD (hereinafter referred to as the "VILLAGE") upon which Plaintiffs' rely in support of their allegations of trespass is unclear, as multiple actions which affect water management are alleged against the VILLAGE.

On the one hand, it seems that Plaintiffs are attempting to hold the VILLAGE liable for injuries which they allege they suffered as a result of the VILLAGE's approval of development "in and around the subject property" between 1979 and the present. (Paragraph 6, Count I of Complaint.) More specifically, Plaintiffs' reference Vintage Harvest and Spangler subdivisions. (Paragraph 12, Count I of Complaint).

The decision to approve a subdivision development is ultimately made by the Village Board. (Plainfield, IL., Ord. No. 2091, §3-2-1 (2002)). The duties of the Board necessarily include official action which is judicial in nature, in that the Board must exercise discretion and judgment in deciding whether to approve development of a subdivision – they do not approve a subdivision in a prescribed manner, pursuant to an order, and without discretion as to the propriety of the approval. The Illinois Supreme Court specifically recognized that a municipal corporation acts judicially, or exercises discretion, when it selects and adopts a plan in the making of public improvements, such as constructing sewers or drains. *In re Chicago Flood Litigation*, 176 Ill.2d at 194. Plaintiffs allege that the injuries the Village is responsible for their

alleged flooding problems as a result of its approval of the aforementioned subdivision developments. Approval of a subdivision development constitutes the determination of policy and requires the Board members to balance competing interests and make a judgment call as to whether to approve the subdivision or not. Because approval of a subdivision will implicate different circumstances on a case-by-case basis, the Board making the decision must necessarily use its discretion in making the determination whether to approve the development in the Village. As such, the VILLAGE is immune from liability for its decision to approve various subdivision developments as such decisions fall within the discretionary immunity provided by the Tort Immunity Act. 745 ILCS 10/2-201, 10/2-109.

Additionally, Plaintiffs' take issue with the alleged "custom and policy of pumping out retention ponds as a storm water drainage method." (Paragraph 13-14, Count I of Complaint). The determination of whether to pump out a retention pond to facilitate storm water drainage is made by the Director of Public Works. This job position involves planning, organizing and supervising the activities of the Department of Public Works for the VILLAGE. This includes maintaining operations related to water system operation and maintenance, water quality, wastewater collection and treatment, inspection of new underground water and sewer construction, storm water collection, and storm sewer maintenance. Therefore, it is clear that this position involves the determination of policy or the exercise of discretion because it requires the director to balance competing interests and make judgment calls as to managing the aforementioned operations. Furthermore, the decision whether to pump out a retention pond involves the exercise of personal deliberation and judgment in deciding whether to perform the act and the manner in which it should be done. Furthermore, it requires the employee to balance competing interests and make a judgment call as to whether pumping out the retention pond will

5

best serve each of those interests.  In other words, this decision involves the public official's discretion as to the propriety of the act to the particular circumstances in each instance.

The Plaintiffs are attempting to hold the VILLAGE liable for conduct which constitutes the determination of policy or a discretionary act for which it is immune under 745 ILCS 10/2-201 and 2-201.  Therefore, Count I should be dismissed with prejudice.

Last, in the case that Plaintiffs are attempting to allege in their Complaint (Paragraphs 17-19 of Count I) that the VILLAGE committed trespass by entering the Plaintiffs' property, excavating their land, and placing storm water infrastructure upon or under their property, the VILLAGE did not enter Plaintiffs' land and excavate a portion of Plaintiff's land, nor did the VILLAGE place storm water infrastructure upon or under Plaintiffs' land.  (See Affidavit of Doug Kissel, attached hereto as Exhibit A).  As such, the Plaintiffs cannot hold the VILLAGE liable for conduct that was not committed by the VILLAGE or any of its employees.

## II.  COUNT II – WILLFUL AND WANTON CONDUCT

### A.  CHARACTERIZATION OF ACTS AS WILLFUL AND WANTON DOES NOT MAKE COUNT II OF THE COMPLAINT SUFFICIENT TO CHARGE WILLFUL NEGLECT.

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *Chaney v. City of Chicago*, 1996 WL 718519, *1 (N.D. Ill. 1996).  The complaint must state either direct or inferential allegations concerning all material elements necessary for recovery under the chosen legal theory.  Id.  Although pleadings should be construed in the light most favorable to the Plaintiff, in order to withstand a motion to dismiss, a complaint must allege facts sufficient to set forth the essential elements of the cause of action. *Lindsey v. Ed Johnson Oldsmobile, Inc.*, 1996 WL 411336, *2 (N.D.Ill.,1996).  Section 1-210 of the Tort Immunity Act dictates that, to

state a cause of action for willful and wanton negligence, a plaintiff must allege facts sufficient to show that a defendant committed a "course of action" with actual or deliberate intention to harm or with an utter indifference or conscious disregard for the safety of others. 745 ILCS 10/1-210.

It is well within the court's purview to decide as a matter of law whether a plaintiff has alleged sufficient facts such that a jury question concerning the willful and wanton nature of defendant's conduct is created. *Doe v. Calumet City*, 161 Ill.2d 374, 390 (1994). As such, a plaintiff must allege in her complaint facts sufficient to demonstrate that the acts alleged were done with a heightened state of mind, more than just negligently. Id. In other words, the plaintiff's allegations should allow the court to delineate that allegations demonstrate willful and wanton conduct – merely adding the words "willfully and wantonly" to factual allegations is not enough to sufficiently plead the cause of action for an intentional tort. *Harkcom v. E. Texas Motor Freight Lines, Inc.*, 104 Ill.App.3d 780, 783 (3d Dist. 1982). Allegations of willful and wanton misconduct found in Section 1-210 of the Tort Immunity Act must satisfy a higher threshold than allegations of mere neglect. *See Jarvis v. Herrin City Park Dist.*, 6 Ill.App.3d 516, 524-25 (5th Dist. 1972). The record must show a purpose or disposition on the part of defendant showing such a gross want of care and regard for the rights of others as to justify the presumption of willfulness or wantonness. See Id. at 521.

In the *Jarvis* case, the Court reviewed various cases which had made an analysis of factual allegations which will sufficiently allege willful and wanton misconduct. It noted the case of *Krub v. Walldren Express & Van Co.*, 214 Ill.App. 18, 24 (1919), which described sufficient factual allegations of "wilful and wanton" misconduct as those which affirmatively allege "such a lack of care for the rights of others as implies either a disregard of consequences

or a willingness to inflict injury, which conduct constitutes wilful negligence." *Jarvis*, 6

Ill.App.3d at 521-22. The Court noted that "where there is an entire absence of care for the life,

person, or property of others, exhibiting indifference to disastrous consequences, it is wilful." Id.

Ultimately, the *Jarvis* Court found that the misconduct described did not rise to the level of

willful and wanton simply by using the words "conscious disregard for others" when what

Plaintiff actually described was mere neglect. Id. at 524-25.

In the instant case, Plaintiffs have alleged that Defendant VILLAGE is guilty of willful

and wanton conduct in the following ways:

a) The Village has failed to comply with the minimum requirements of the Will County
Storm water Management Plan;

b) By way of dedication, the Village owns and operates drainage facilities which the Village
knew would be defective. In the alternative, the Village discovered that the aforesaid
infrastructure was defective and did nothing to remediate the same;

c) The Village has demonstrated a reckless disregard for the drainage ramifications of the
Plaintiffs by allowing discharge of storm water the Village knew or should have known
could negatively impact Plaintiffs' property;

d) The Village engineer and its staff have disregarded the presence of groundwater and
nevertheless approved subdivision developments with the knowledge that run-off from
said developments would flood the Plaintiffs' property; and

e) The Village has prosecuted Plaintiffs for alleged ordinance violations when no other
citizen has been prosecuted and the alleged incident occurred wholly outside the
jurisdiction of the VILLAGE.

(Complaint, Count II, Paragraph 37).

Where the facts alleged do not show that it was the *intention of defendants to inflict an*

*injury*, the characterization of the act as willful will not make the complaint good, as charging

willful neglect. The allegations in the instant case, as listed above, amount to nothing more than

a charge of neglect, and use of the words "willful" and "wanton", does not change the allegations

of fact relating thereto. *Ingram v. N.Y. Central R.R. Co.*, 30 Ill.App.2d 455, 459 (4th Dist. 1961).

Paragraph 37(a) only states that "the Village has failed to comply with the minimum requirements of the Will County Storm water Management Plan." The only conduct which this statement discusses is a "failure to comply." Likewise, with regard to paragraph 37(e), the only allegation of conduct that this statement discusses is Defendant's prosecution of Plaintiffs for alleged ordinance violations. Plaintiffs simply do not make any allegation regarding an actual or deliberate intention to harm by the Village or that they acted with an utter indifference or conscious disregard. 745 ILCS 10/1-210. As such, these statements, even if proven, would only constitute negligence. If mere addition of the words "willful and wanton" was enough to delineate willful and wanton conduct from negligent conduct, courts would not have decided that allegations of "willful and wanton" misconduct must meet a higher standard (*see Jarvis*, 6 Ill.App.3d at 524-25) and there would be no real delineation between allegations for negligent conduct and allegations for willful and wanton misconduct. Plaintiffs simply must allege additional facts which establish the willful and wanton nature of the Defendant's actions, and Plaintiffs fail to do so.

B.   **THE VILLAGE CANNOT BE HELD LIABLE FOR THE CONDUCT DESCRIBED IN PARAGRAPH 37(D) AND (E) PURSUANT TO 745 ILCS 10/2-201 and 2-109.**

For the purposes of this section, Defendant adopts section (I)(b) of this Brief. The conduct listed in Paragraph 37 of Count II of the Complaint constitutes discretionary acts by the VILLAGE. Section 2-201 of the Illinois Tort Immunity Act states:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion *even though abused.*

745 ILCS 10/2-201 (emphasis added).

Each action that Plaintiffs use as the basis for their allegations in subsection (d) and (e) of paragraph 37 of Count II falls within the bounds of discretionary immunity. For subsection (d), Plaintiffs attempt to impose liability for the Village engineer's approval of subdivision developments. As discussed previously in section (I)(B), approval of a subdivision is an exercise of discretion and determination of policy by the Village Board, which body's responsibilities necessarily involve the exercise of discretion and determination of policy. Such approval of the development of a subdivision does not amount to mere performance of a task in accordance with an order, but rather requires personal deliberation, decision, and judgment by the Board. Again, members of the board fall within the definition of "public employee" as that term is defined in the Tort Immunity Act and, therefore, the immunities provided therein are applicable to the conduct of those members. 745 ILCS 10/1-202.

Moreover, section 2-201 would still grant immunity for Defendants' alleged conduct in Paragraph 37(d), as the plain language of 745 ILCS 10/2-201 contains no exception to immunity for willful and wanton conduct. 745 ILCS 10/2-201; *In re Chicago Flood Litigation,* 176 Ill.2d 179, 195-96 (1997). The Illinois Supreme Court has recognized that the immunity in section 2-201 for discretionary acts extends to willful and wanton conduct. Id.

In relation to subsection (e), a prosecutor is vested with discretion in determining whether a case should be prosecuted. *People v. Travis*, 94 Ill. App. 3d 983, 992 (1st Dist. 1981). Furthermore, the decision whether to prosecute involves personal deliberation, decision, and judgment by the prosecutor as to the merits of the case and likelihood of success in pursuing that prosecution.

Because the VILLAGE is immune from liability for the conduct described in Paragraph 37 (d) and (e), Plaintiffs' claim in those paragraphs must fail.

**C. THE VILLAGE CANNOT BE HELD LIABLE FOR THE CONDUCT DESCRIBED IN PARAGRAPH 37(D) BECAUSE THEY ARE ENTITLED TO ABSOLUTE IMMUNITY PURSUANT TO 745 ILCS 10/2-104.**

For this section, Defendant VILLAGE adopts its argument in section (I)(A) and requests this Court dismiss Paragraph 37(d) of Count II of Plaintiffs' Complaint.

**III. COUNT III – INTENTIONAL TRESPASS**

**A. PLAINTIFFS HAVE NOT PROPERLY PLED A CAUSE OF ACTION FOR INTENTIONAL TRESPASS.**

Trespass is an intentional invasion of the exclusive possession and physical condition of land. *Freese v. Buoy*, 217 Ill.App.3d 234, 244 (5th Dist. 1991). One can be liable in trespass for an intrusion by a thing or third person if he acts with knowledge that his conduct will, to a substantial degree of certainty, result in the intrusion. Id. In other words, a person must know with a high degree of certainty that the intrusion will naturally follow from his act before liability for trespass attaches. Id. Thus, a person who aids, abets, assists, or directs the commission of a trespass by another is liable for trespass. Id.

In the instant case, Plaintiffs have adopted in Count III the factual allegations in Count I. Reading both counts, Plaintiffs only state that Defendant VILLAGE "knew or should have known that the result [of the approval of the subdivision developments] would negatively impact the Plaintiffs' property due to flooding." (Complaint, Count I, Paragraph 8). This statement does not equate with knowledge "to a high degree of certainty" that the approval of the subdivision developments would result in flooding to Plaintiffs' property. Because Plaintiffs have failed to properly plead the requisite element which establishes the intentionality of "intentional trespass" as a cause of action, as it differs from negligent trespass, Plaintiffs' pleading as to Count III must fail.

**B. THE VILLAGE IS ENTITLED TO DISCRETIONARY IMMUNITY PURSUANT TO THE PLAIN LANGUAGE OF 745 ILCS 10/2-201 AND SECTION 2-109.**

The VILLAGE readopts its prior argument in section I(B) of this brief related to

discretionary immunity.  In furtherance of this argument, to reiterate, section 2-201 of the Tort

Immunity Act states that:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion *even though abused.*

745 ILCS 10/2-201.  The final phrase of this section is dispositive of the fact that the Tort

Immunity Act, by its plain language, allows for abuse of discretion in the applicability of the

immunity provided for therein.   Without admitting any such abuse of discretion, it is the

VILLAGE's contention that it is still entitled to immunity for the conduct under Count III for

which Plaintiffs attempt to impose liability through a cause of action for intentional trespass.

Likewise, the plain language of 745 ILCS 10/2-201 contains no exception to immunity

for willful and wanton conduct.  745 ILCS 10/2-201; *In re Chicago Flood Litigation,* 176 Ill.2d

179, 195-96 (1997).  The Illinois Supreme Court has recognized that the immunity in section 2-

201 for discretionary acts extends to willful and wanton conduct.  Id.  This holding is in keeping

with the language of section 2-201, which plainly dictates that the immunity therein is

applicable, even in the case of an abuse of discretion.  Because of the legislature's clear intent to

extend this immunity to a public employee for the determination of policy when the employee is

acting in the exercise of discretion, even if that discretion is abused, the VILLAGE is still

entitled to immunity under the provisions of 745 ILCS 10/2-109 and 2-201, regardless of

Plaintiffs' attempt to impose liability based on the "intentionality" of Defendant's conduct.

### C. THE VILLAGE CANNOT BE HELD LIABLE BECAUSE THEY ARE ENTITLED TO ABSOLUTE IMMUNITY PURSUANT TO 745 ILCS 10/2-104.

For this section, Defendant VILLAGE adopts its argument in section (I)(A) and requests

this Court dismiss Count III of Complaint.

## IV. COUNT IV DOES NOT SET FORTH A CAUSE OF ACTION FOR WRONGFUL 'TAKING' UNDER THE ILLINOIS CONSTITUTION

Of course, Article I, Section 15, of the Illinois State Constitution provides that "[p]rivate

property shall not be taken or damaged for public use without just compensation." Count IV of

Complaint invokes Article I, Section 15, in support of essentially the following two contentions:

(1) the conduct of Village of Plainfield and Plainfield Township, in approving certain

development in around the subject property, and allowing drainage of certain neighboring

retention ponds, has caused an abnormal surcharge of groundwater in addition to overland

flooding upon Plaintiffs' property (Amended Complaint, Count I); (2) Village of Plainfield and

Plainfield Township did, "without written permission," install infrastructure on Plaintiffs'

property and otherwise enter onto Plaintiffs' property to address "the water problem," and then

failed to repair the excavation site (Amended Complaint, Count I).

Concerning alleged flooding, Count I avers that, alternatively since 1979 and 1989,

Village of Plainfield and Plainfield Township approved the supposedly offending development

of adjoining lands. Said Count I also states that, since 2004, overland flooding and increased

water table have resulted in damage to the subject property.

Plaintiffs fail to specify at all when Village of Plainfield and Plainfield Township purportedly installed infrastructure on Plaintiffs' property to address water migration, and then failed to repair the excavation site.

Addressing first Plaintiff's claims *vis a vis* water migration, the case of *Pratt v. Rosenfield*, 399 Ill. 247 (1948), illustrates that periodic flooding is not tantamount to a 'taking' for purposes of the Illinois State Constitution. In *Pratt*, plaintiffs challenged the Trial Court's dismissal of plaintiffs writ of mandamus seeking to have the City of Kankakee, as well as other defendants, to jointly file a petition for the determination of damages to plaintiffs' property arising from certain changes of grade in connection with the removal of a viaduct, which grade changes caused surface waters to enter upon plaintiffs' property. Said water migration caused substantial damages to plaintiffs' buildings, rendering them "unfit for the uses to which they are now devoted." *Id.* at 248-249. The *Pratt* plaintiffs sought mandamus under the auspices of the Illinois State Constitution's prohibition against taking without just compensation. The Illinois Supreme Court noted that "[i]t has not alleged that these waters accumulate and remain on the premises and thereby prevent the use thereof, but it is claimed that by reason of their running into the buildings the damages are occasioned. Running surface waters are not constantly present but are temporary and come as a result of rain or snow". *Id.* at 251. Based on these facts, the Supreme Court determined that such allegations of temporary *albeit* substantial intrusions of water "are not sufficient to indicate a physical invasion of [plaintiffs'] properties, and there is no showing that any property was actually taken [for purposes of the Illinois Constitution] in connection with the improvement." *Id.* at 252. The Supreme Court therefore affirmed the Trial Court's dismissal of plaintiffs' cause.

Referring to *Pratt*, the Court in *Luperini v. County of DuPage*, 265 Ill.App.3d 84, 89 (2nd Dist. 1994), declared that, "[w]here [a] public improvement causes only temporary accumulations of water on the subject property, a taking has not occurred." Applying this rationale, the *Luperini* Court determined that installation of storm sewer on adjacent land that caused flooding to plaintiff's did not amount to a constitutional taking. See also *Starcevich v. City of Farmington*, 110 Ill.App.3d 1074 (3rd Dist. 1982) (flood damage during a rain storm allegedly because of municipality's activities in building a recreational field not tantamount to a constitutional taking).

The very language of the Amended Complaint, that flooding only occurs during "significant" rain events (Amended Complaint, Count I, ¶ 29), concedes that the subject flooding is of only a transitory nature; such flooding is therefore not actionable according to relevant Illinois case law upon the subject of 'takings.'

As for contentions that Village of Plainfield and Plainfield Township installed infrastructure upon Plaintiffs' property without "written permission," and otherwise entered Plaintiffs' property for such purposes, it is simply not true that Village of Plainfield or its agents engaged in any of these acts (see attached Affidavit), so that Village of Plainfield should be dismissed from this particular cause for this reason.

Moreover, Plaintiffs protests concerning entry upon their property for purposes of addressing alleged water migration are of no moment given the tacit judicial admission by Plaintiffs that oral permission for such entry was indeed offered (Amended Complaint, Count I, ¶ 17).

And leaving aside Plaintiffs having waived any claim they may have for an unconstitutional taking by virtue of their oral permission to enter upon their lands, a

governmental entity may enter upon lands harmless from any claim of unjust taking, within "the scope of valid agreements [between the governmental entity] and the land owner" to engage in such activity. *V.J. Scogin v. United States*, 33 Fed.3L. 568, 578 (1995). Indeed, even if the governmental entity's presence is unpermitted by the landowner, so long is that presence "does not interfere [ ] with plaintiff's use of his property," such conduct will also not be viewed as an 'unconstitutional taking.' *Id.*

## V. COUNT V DOES NOT SET FORTH A CAUSE OF ACTION UNDER THE UNITED STATES CONSTITUTION.

The allegations of Count V are substantively no different than those set forth in Count IV, except that Count V seeks damages under the rubric of the United States Constitution.

However, as for the contentions of Count V in relation to flooding, cases such as *Pratt* and *Luperini* offer instruction that temporary accumulations of water, even when such accumulations cause damage to property, do not provide the basis for a claim of unconstitutional takings. Indeed, the United States Supreme Court has declared, in *Loretto v. Teleprompter Manhattan CATV, Corp.*, 458 U.S. 419, 428 (1982), that "this Court has consistently distinguished between flooding cases involving a permanent physical occupation, on the one hand, and cases involving a more temporary invasion, or government action outside the owner's property that causes consequential damages within, on the other. A taking has always been found **only** in the former situation."

One of the cases upon which *Loretto* relies in articulating the foregoing principle, is *Sanguinetti v. United States*, 264 U.S. 146, 149 (1924), in which the Court stated that "in order to create an enforceable liability against the government, it is at least necessary that the [water] overflow be the direct result of [a] structure [imposed by the governmental entity], and constitute

16

an actual, **permanent** invasion of the land, amounting to an appropriation of and **not merely an injury to** the property [emphasis added]."

Moreover, mere local regulatory land management which impairs the value of property is not tantamount to a Constitutional 'taking.' *Diaz v. City of Riverside*, 895 F.2d 1416 (9th Cir. 1990).

As with Count IV, the very language of the Amended Complaint, that flooding only occurs during "significant" rain events, concedes that the subject flooding is of only a transitory nature; such flooding is therefore not actionable according to either Illinois or federal case law upon the subject of 'takings.'

Again referring to Plaintiff's contentions that Village of Plainfield and Plainfield Township installed infrastructure upon Plaintiffs' property without "written permission," neither Village of Plainfield nor its agents engaged in any of these acts (see attached Affidavit), so that Village of Plainfield should be dismissed from this particular cause for this reason.

And, also again, leaving aside Plaintiffs having waived any claim they may have for an unconstitutional taking by virtue of their oral permission to enter upon their lands, a governmental entity may enter upon lands harmless from any claim of unjust taking, within "the scope of valid agreements [between the governmental entity] and the land owner." *V.J. Scogin v. United States*, 33 Fed.3L. 568, 578 (1995). Indeed, even if the governmental entity's presence is unpermitted by the landowner, so long is that presence "does not interfere [ ] with plaintiff's use of his property," such conduct will also not be viewed as an 'unconstitutional taking.' *Id.*

## VI.  COUNT VI – MALICIOUS PROSECUTION

### A.  PLAINTIFFS HAVE FAILED TO FILE THEIR MALICIOUS PROSECUTION CLAIM AGAINST JOAN MEYERS WITHIN THE ONE YEAR LIMITATIONS PERIOD PRESCRIBED BY §8-101(a) OF THE TORT IMMUNITY ACT.

Count VI of Plaintiff's Complaint alleges malicious prosecution against both JOAN

MEYERS (hereinafter referred to as "MEYERS") and the VILLAGE.   At all times relevant to

this claim, MEYERS was acting within the scope of her employment as a Village attorney with

the VILLAGE.  (See Count VI of Plaintiff's Complaint, paragraph 25).  The VILLAGE is a

"local public entity" as that term is defined in the Local Governmental and Governmental

Employees Tort Immunity Act (hereinafter referred to as the Tort Immunity Act).  745 ILCS

10/1-206.   Because MEYERS' conduct occurred during the course and scope of her

employment with the VILLAGE, she is an "employee" for purposes of the Tort Immunity Act.

745 ILCS 10/1 et seq.

Pursuant to Section 8-101 of the Tort Immunity Act, "[n]o civil action…may be

commenced in any court against a local entity or any of its employees for any injury unless it

was commenced within one year from the date that the injury was received or the cause of action

accrued." 745 ILCS 10/8-101(a).  The primary purpose of the notice requirement is to furnish

timely notice of injury so that the municipality can investigate and make prompt settlement of

meritorious claims, and also to give notice to a public entity of possible liability so that

budgetary provisions may be knowledgeably arranged. *Mounce v. City of Lincoln*, 64 Ill.App.3d

461, 463, (4th Dist. 1978).

A plaintiff's cause of action for malicious prosecution accrues when the underlying

prosecution of which plaintiff complains was terminated in his favor. *Ferguson v. City of*

*Chicago*, 213 Ill.2d 94, 99, 820 N.E.2d 455, 459 (Ill. 2004).  In the instant case, the underlying

action of which Plaintiffs complain was terminated on November 6, 2006.  (Plaintiff's

Complaint, Count VI, Paragraph 23).  Plaintiffs did not file their claim for malicious prosecution

against Defendant MEYERS until May 12, 2008, more than six (6) months after the one (1) year

filing period required by 745 ILCS 10/8-101(a) had expired on November 6, 2007.  Because

Plaintiffs did not file their claim against MEYERS within the one (1) year limitations period

prescribed by law, Count VI of Plaintiff's Complaint against MEYERS is time-barred.

## B.  BECAUSE JOAN MEYERS IS NOT LIABLE FOR PLAINTIFF'S MALICIOUS PROSECUTION CLAIMS, THE VILLAGE HAS ABSOLUTE IMMUNITY PURSUANT TO §2-109 OF THE TORT IMMUNITY ACT.

At all times relevant to this claim, MEYERS was acting within the scope of her

employment as a Village attorney with the VILLAGE.  (See Count VI of Plaintiff's Complaint,

paragraph 25).  The VILLAGE is a "local public entity" as that term is defined in the Local

Governmental and Governmental Employees Tort Immunity Act (hereinafter referred to as the

Tort Immunity Act).  745 ILCS 10/1-206.   Because MEYERS' conduct occurred during the

course and scope of her employment with the VILLAGE, she is an "employee" for purposes of

the Tort Immunity Act.  745 ILCS 10/1 et seq.

Section 2-109 of the Tort Immunity Act states that "[a] local public entity is not liable for

an injury resulting from an act or omission of its employee where the employee is not liable."

745 ILCS 10/2-109.  Because Plaintiffs cannot impose liability upon MEYERS in Count VI for

their malicious prosecution claim, Section 2-109 of the Tort Immunity Act dictates that the

VILLAGE is immune from liability.  745 ILCS 10/2-109; see also *Flores v. Palmer Marketing,*

*Inc.,* 361 Ill.App.3d 172, 179, 836 N.E.2d 792, 797 (1st Dist. 2005).

## C.  IN THE ALTERNATIVE, PLAINTIFF HAS NOT SUFFICIENTLY PLED A CLAIM FOR MALICIOUS PROSECUTION AS AGAINST EITHER THE VILLAGE OR JOAN MEYERS.

In the alternative, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,

Plaintiff has failed to sufficiently plead a claim for malicious prosecution against either the

VILLAGE or MEYERS.  A motion to dismiss pursuant to Rule 12(b)(6) does not test whether

the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *Chaney v. City of Chicago*, 1996 WL 718519, *1 (N.D. Ill. 1996). The complaint must state either direct or inferential allegations concerning all material elements necessary for recovery under the chosen legal theory. Id. Although pleadings should be construed in the light most favorable to the Plaintiff, in order to withstand a motion to dismiss, a complaint must allege facts sufficient to set forth the essential elements of the cause of action. *Lindsey v. Ed Johnson Oldsmobile, Inc.,* 1996 WL 411336, *2 (N.D.Ill.,1996)

Count VI of Plaintiffs' Complaint alleges malicious prosecution against both the VILLAGE and MEYERS. (Plaintiff's Amended Complaint, Count VI). To properly state a claim for malicious prosecution, plaintiffs must sufficiently plead that (1) defendant(s) began or continued the original criminal proceeding; (2) plaintiff received a favorable termination; (3) probable cause did not exist; (4) malice was present; and (5) plaintiff suffered damages. *Swick v. Liautaud*, 169 Ill.2d 504, 512, 662 N.E.2d 1238, 1242 (1996). If even *one* element is missing, Plaintiffs are barred from pursuing their claim. Id.

With regards to the second element, Plaintiffs have the burden to plead and prove that they received a favorable termination of the prosecution against them. Id. at 513. Plaintiffs fail to plead this element. Plaintiffs simply plead that "Plaintiffs refused this offer and Defendant MEYERS then dismissed all of the charges." (Complaint, Count VI, Paragraph 24). In the instant case, the prosecution against the Plaintiffs was terminated via *nolle prosequi*. A *nolle prosequi* is not a final disposition of a case but is a procedure which reverts the matter to the same state which existed before the commencement of the prosecution. *People v. Woolsey,* 139 Ill. 2d 157, 163, 564 N.E.2d 764, 766 (1990); *Washington v. Summerville*, 127 F.3d 552, 558 (7th Cir. 1997). In the civil malicious prosecution context, the majority rule is that a termination of

criminal proceedings via *nolle prosequi* is a favorable termination for the defendants, **unless** the prosecutor abandons the proceedings for reasons that are not indicative of the defendant's innocence. Id.; *Swick*, 169 Ill.2d at 513.

Addressing Plaintiffs pleadings, then, they have not specifically pled that the *nolle prosequi* by MEYERS was abandoned because of their innocence. Complaint has alleged numerous facts which attempt to refute the existence of probable cause to prosecute them; however, Plaintiffs do not specifically plead that the prosecutor's action in *nolle prossing* the proceedings was done *on the basis of* their innocence. Plaintiffs have simply stated, with regards to the termination of the proceedings, that MEYERS "dismissed all of the charges." They simply fail to characterize the *termination* as indicative of their innocence. "A bare nolle prosse without more is not indicative of innocence." *Washington*, 127 F.3d at 558. Plaintiffs have failed to plead one of the requisite elements of a claim for malicious prosecution and, as such, their pleading as to Count VI must fail.

Last, Plaintiffs must plead facts sufficient to show that they have suffered damages. Plaintiffs' Complaint has alleged they have suffered damages in that they "were forced to defend against a frivolous claim, lost time from work and suffered from emotional distress." This statement of Plaintiffs' basis for damages is insufficient. In an action for malicious prosecution, a plaintiff must show that he suffered a *special injury beyond the usual expense, time or annoyance in defending the underlying action. Howard v. Firmand*, 378 Ill.App.3d 147, 152 (1st Dist. 2007). Plaintiffs' costs of defense and lost wages simply constitute the usual expense and time incurred in defending the claims against them, while their "emotional distress" has not been pled to establish anything more than the usual "annoyance" of defending oneself in the

underlying action.   These injuries are not sufficient to sustain a cause of action for malicious

prosecution (id. at 153) and their pleading in Count VI must fail.

Again, failure to properly plead even one element of a claim for malicious prosecution

bars Plaintiffs from pursuing their claim.   *Swick*, 169 Ill.2d at 512.   For the aforementioned

reasons, Defendants request this Honorable Court dismiss Count VI of Plaintiff's Complaint.

## VII. COUNT VII AND VIII – SECTION 1983

### A.   DEFENDANT JOAN MEYERS IS ENTITLED TO ABSOLUTE IMMUNITY FROM DAMAGES UNDER §1983 IN COUNTS VII AND VIII.

A prosecutor is absolutely immune from damages under §1983 for actions taken in

initiating and pursuing a criminal prosecution as well as in presenting the state's case.   *Imbler v.*

*Pachtman*, 424 U.S. 409, 430 (1976).   Activities which are intimately associated with the judicial

phase of the criminal process are functions to which the reasons for absolute immunity apply

"with full force."   Id.   In analyzing these reasons for the immunity, the U.S. Supreme Court in

*Imbler* cited the *Pearson v. Reed* case (6 Cal.App.2d 277, 287, 44 P.2d 592, 597 (1935)) case:

> The office of public prosecutor is one which must be administered with courage
> and independence. Yet how can this be if the prosecutor is made subject to suit by
> those whom he accuses and fails to convict? To allow this would open the way for
> unlimited harassment and embarrassment of the most conscientious officials by
> those who would profit thereby. There would be involved in every case the
> possible consequences of a failure to obtain a conviction.  There would always be
> a question of possible civil action in case the prosecutor saw fit to move dismissal
> of the case. . . The apprehension of such consequences would tend toward great
> uneasiness and toward weakening the fearless and impartial policy which should
> characterize the administration of this office. The work of the prosecutor would
> thus be impeded, and we would have moved away from the desired objective of
> stricter [and] fairer law enforcement.

*Imbler v. Pachtman*, 424 U.S. 409, 423-424, 96 S.Ct. 984, 992 (U.S. 1976).   After specifically

finding that the same considerations of public policy which underlie the common-law rule of

absolute immunity for prosecutors supports a finding of absolute immunity under section 1983,

the *Imbler* Court stated,

> If a prosecutor had only a qualified immunity, the threat of [section] 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. Cf. Bradley v. Fisher, 13 Wall., at 348, 20 L.Ed. 646; Pierson v. Ray, 386 U.S., at 554, 87 S.Ct., at 1217. Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.

*Imbler*, 424 U.S. at 424-425. The Seventh Circuit has ruled in keeping with these principles. In

*Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003), the Plaintiff homeowners sued the prosecuting

city attorney under 42 U.S.C. §1983 for initiating proceedings to demolish a house on their

property, allegedly in retaliation for the owners' prior public criticism of the attorney. Id. at 741.

The Seventh Circuit affirmed the District Court's dismissal of the case on the basis that the

prosecutor was entitled to absolute immunity from suit. Id. The Court held that "[p]rosecutors

are absolutely immune from suits for monetary damages under §1983 for conduct that is

"intimately associated with the judicial phase of the criminal process." Id. at 742. In other

words, prosecutors are entitled to absolute immunity when their actions are done as an advocate

for the State. Id. Moreover, the Court held that these standards apply to a prosecutor's acts in

initiating a civil proceeding as well, as long as "the prosecutor is 'functioning in an enforcement

role analogous to' his role in criminal proceedings." Id. Most importantly, the Court specifically

ruled that prosecutors are entitled to this absolute immunity *even if* they act maliciously,

unreasonably, without probable cause, or even on the basis of false testimony or evidence. Id.

In the instant case, Count VII and VIII of Complaint attempts to obtain monetary damages from Defendants VILLAGE and MEYERS for MEYERS' conduct in prosecuting them for the following offenses:

- Jacob E. Murphy committed the offenses of: Unlawful Operation of Motorized Vehicle on Plainfield Township Property, Chapter III, Section 1, Paragraph A, and Unlawful Operation of Motorized Play Vehicle Upon Private Property, Chapter 5-12(c)(2).
- Pamela S. Murphy committed the offense of: Parental Liability, Permitting Unlawful Operation of Motorized Vehicle, Chapter 5-12(e).
- Mark E. Murphy committed the offense of: Parental Liability, Permitting Unlawful Operation of Motorized Vehicle, Chapter 5-12(e).

(see Complaints attached hereto as Exhibit B). Upon review of Plaintiffs' Complaint in Count VII (which adopts those allegations in Count VI), it is clear that each and every factual allegation by Plaintiffs describes conduct by MEYERS which was done while she was acting as an advocate for the State. (Plaintiffs Amended Complaint, Count VI, Paragraphs 10-15, 18-19, 21-25, 29, 35, 36). Every factual allegation regarding MEYERS' conduct for which Plaintiffs' attempt to impose liability describes some action taken in preparation, initiation, and continuation of the prosecution against Plaintiffs for the above-mentioned ordinance violations. (Plaintiffs Amended Complaint, Count VI, Paragraphs 10-15, 18-19, 21-25, 29, 35, 36).

Similar to the facts of *Smith v. Powers,* Plaintiffs here seem to assert that the prosecution against them was initiated and pursued in retaliation for their complaints about flooding problems at their home. (See Paragraphs 6, 13, 26, 32 of Count VI of Complaint). However, as demonstrated by the *Smith* Court's analysis and holding, allegations of this nature do not negate the absolute immunity afforded to prosecutors under the aforementioned circumstances. Because Defendant MEYERS is entitled to absolute immunity for Plaintiffs' §1983 claims, Defendant MEYERS requests this Court dismiss Count VII and VIII of Complaint as it relates to her.

Additionally, the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito,* 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create a cause of action based on vicarious responsibility. Id. In other words, under §1983, Plaintiffs cannot hold the VILLAGE liable in Count VII under the theory that it is the principal (employer) of Defendant MEYERS as the agent (employee).

Similarly, in Count VIII, Plaintiffs attempt to hold the VILLAGE liable under §1983, utilizing the ruling in *Monell v. Department of Social Services of the City of New York,* 436 US 658 (1978), which established that governmental entities could be held liable under §1983 if a plaintiff proved that: 1) he or she has suffered a deprivation of a constitutionally protected interest, and 2) the deprivation was caused by an *official policy, custom or usage* of the municipality. *Powe v. City of Chicago,* 664 F.2d 639 (7th Cir. 1981) (emphasis added). In other words, Plaintiffs must show that the execution of a government policy or custom inflicted injury that the government *as an entity* is responsible for.

In the instant case, the factual allegations alleged in Count VIII of Complaint fail to properly plead the existence of a government policy or custom. Although Plaintiffs do allege in paragraphs 48 and 50 of Count VIII that the Defendants had "final policy-making authority" regarding prosecution of Plaintiffs, all of the conduct described (see Count VI-Count VIII) essentially relates to the "policy-making" and/or "policy-making authority" of MEYERS as it relates to her decision to prosecute Plaintiffs. Plaintiffs have not alleged facts specific to the VILLAGE as a defendant which show that the VILLAGE had a policy or custom of "subjecting the Plaintiffs to a knowingly false charge." (See Count VII, Paragraph 47). Plaintiffs are really attempting to hold the VILLAGE liable for the decision of MEYERS to prosecute them and state no claim that the VILLAGE had a policy or custom of falsely charging plaintiffs in general.

Again, the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito,* 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create a cause of action based on vicarious responsibility. Id. In other words, under §1983, Plaintiffs cannot hold the VILLAGE liable in Count VIII under the theory that the conduct of Defendant MEYERS as the agent is imputable to the VILLAGE as the principal. As such, Defendant VILLAGE cannot be found liable under Count VIII, as Plaintiffs claims listed therein solely rely upon the conduct of MEYERS as the basis for their claims.

As such, Defendant VILLAGE requests this Court dismiss Counts VII and VIII of Complaint as it relates to the Village.

### B. IN THE ALTERNATIVE, PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR MALICIOUS PROSECUTION UNDER 42 U.S.C. 1983 AGAINST DEFENDANTS VILLAGE AND JOAN MEYERS

Section 1983 creates a cause of action against "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. §1983. Section 1983 is not itself a source of substantive rights, instead it is a means for vindicating federal rights conferred *elsewhere. Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979) (emphasis added). Because Plaintiff's Count VII references those allegations made in Count VI for malicious prosecution, however, for purposes of addressing Count VII, Defendants make the assumption that Plaintiffs are alleging a §1983 malicious prosecution claim. However, the accuracy of this assumption is really unclear, as Plaintiffs' Count VII fails to specify the source of the right of which he alleges he was deprived.

Continuing with the §1983 malicious prosecution theory, however, to state a claim for malicious prosecution under §1983, a plaintiff must demonstrate that: 1) he has satisfied the requirements of a state law cause of action for malicious prosecution; 2) the malicious prosecution was committed by state actors; and 3) he was deprived of *liberty*. *Summerville v. Washington*, 127 F.3d 552, 558-9 (7th Cir. 1997) (emphasis added).

Defendants have already addressed in the previous section of this brief the insufficiencies of Plaintiffs' pleading the common law elements of malicious prosecution in Count VI of their Amended Complaint; for purposes of challenging Plaintiffs' Count VII, Defendants re-adopt those arguments here. When a party fails to satisfy the requirements for malicious prosecution under Illinois law, the "federal claim must fail as well, since has not met the first element of a federal malicious prosecution claim." *Washington*, 127 F.3d at 559.

Moreover, a plaintiff bringing a federal malicious prosecution claim must first clear the preliminary hurdle of stating a specific constitutional right that has been allegedly infringed. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). Malicious prosecution standing alone is not a violation of the United States Constitution. *Penn v. Harris*, 296 F.3d 573, 576 (7th Cir. 2002); *Flores v. City of Palacios,* 381 F.3d 391, 403-04 (5th Cir. 2004).

The only right which Plaintiffs assert, seemingly, to satisfy this requirement states, "[t]he Defendants' aforementioned actions have deprived Plaintiffs of their inalienable right to be free from governmental harassment and intimidation." (Complaint, Count VII, Paragraph 42). With this allegation, Plaintiffs have not alleged a deprivation of liberty from the mere initiation of prosecution and, therefore, Count VII of Complaint is insufficient on its face. Even assuming that Plaintiffs are not alleging a §1983 malicious prosecution claim and, therefore, the requirement of a showing of a deprivation of liberty is not applicable, again, Plaintiffs'

Complaint is devoid of any basis for establishing the "inalienable right to be free from governmental harassment and intimidation" as a right secured by the Constitution and laws of the United States. Without more, not only have the Plaintiffs failed to state a cause of action, but have left Defendants with no notice as to which constitutional rights Plaintiffs assert that Defendants have violated.

In order to properly state a claim under section 1983 against a governmental entity, a plaintiff has to show:

1) *That he or she has suffered a deprivation of a constitutionally protected interest*, and
2) That the deprivation was caused by an official policy, custom or usage of the municipality.

*Powe v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981) (emphasis added). A "*Monell* violation," the subject of Count VIII, is present when the execution of a government policy or custom inflicts injury that the government as an entity is responsible for under Section 1983. *Monell v. Department of Social Services of the City of New York*, 436 US 658 (1978).

In Count VIII, Plaintiffs have simply relied on their allegations in Count VII and, in that way, merely assert the same baseless "constitutional" right as is stated in the latter count. Even assuming Plaintiffs have intended to plead some separate violation of their constitutional rights in Count VIII, they have, again, altogether failed to assert the basis for asserting that "the inalienable right to be free from governmental harassment and intimidation" is a right secured by the Constitution and laws of the United States. Because their pleading does not state a cognizable violation of a constitutional right, Count VIII of Plaintiff's Amended Complaint is also insufficient on its face. Without more, not only have the Plaintiffs failed to state a cause of action, but have left Defendants with no notice as to which constitutional rights Plaintiffs assert that Defendants have violated.

28

**WHEREFORE**, for all of the foregoing reasons, Defendants, JOAN MEYERS and the VILLAGE, pray this Honorable Court grant their Rule 12(b)(6) Motion To Dismiss Plaintiff's Amended Complaint.

VILLAGE and JOAN MEYERS,
Defendants

___s/ANDREW MUCHONEY_____        ___s/MARIE MRAVE_____
ANDREW A. MUCHONEY                   MARIE L. MRAVLE
ARDC No. 6217227                     ARDC No. 6293436

McKeown, Fitzgerald, Zollner,
Buck, Hutchison & Ruttle
2455 Glenwood Avenue
Joliet, Illinois 60435
815/729-4800

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



MARK E. MURPHY and            )
PAMELA S. MURPHY,             )
                              )
          Plaintiffs,         )
    vs.                       )     Case No. 08 CV 03293
                              )
VILLAGE OF PLAINFIELD, a municipal )
corporation, PLAINFIELD TOWNSHIP, )
PLAINFIELD PARK DISTRICT, GREG )
BOTT and JOAN MEYERS, individually, )
                              )
          Defendants.         )

<u>AFFIDAVIT</u>

I, DOUG KISSEL, being first duly sworn under oath, if called to testify in the above cause,

could competently testify to the following facts:

1.  I am currently employed with the Village of Plainfield Department of Public Works and
    have been employed with the Department of Public Works since January 10,1995.  I
    currently hold the title of Wastewater Superintendent.

2.  The Village of Plainfield did not place any type of storm water infrastructure upon or under
    the property located at 16141 Farmingdale Road.

3.  The Village of Plainfield did not excavate a portion of the property located at 16141
    Farmingdale Road.

    Further, Affiant sayeth not.

                                              _____
                                              DOUG KISSEL

Subscribed and sworn to before me
this 16th day of July, 2008.

_____
NOTARY PUBLIC

OFFICIAL SEAL
BARBARA A KUJATH
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/25/10

STATE OF ILLINOIS, } ss.
COUNTY OF WILL, }

IN THE CIRCUIT COURT OF THE 12TH JUDICIAL CIRCUIT
WILL COUNTY

**Village of Plainfield**
**A Municipal Corporation**
**vs.**

MURPHY, MARK E.

16141 FARMINGDALE

PLAINFIELD, IL 60544

Defendant

**BRANCH B GENERAL DIVISION**

Case No._____

## COMPLAINT

### CHARGE

On this __20__ day of _____JUNE_____, 20 _06_, complainant

___OFFICER J. KOCK___ charges the commission of an offense as follows:

*Date*  on _____JUNE 15_____, 20 _06_, at and within the village

of Plainfield, Will County, Illinois.

*Defendant*  ___MARK E. MURPHY___ a ~~female~~ male person,

*Offense*  committed the offense of ___PARENTAL LIABILITY; PERMITTING UNLAWFUL___

___OPERATION OF MOTORIZED VEHICLE___

*Nature and Elements of Offense*  in that, ___MARK MURPHY, THE PARENT OF JACOB MURPHY, A MINOR, PERMITTED___

___AND/OR ALLOWED JACOB TO OPERATE A FOUR WHEELER (A MOTORIZED___

___PLAY VEHICLE) ON PRIVATE PROPERTY WITHIN THE VILLAGE OF PLAINFIELD,___

___WITHOUT THE CONSENT OF THE OWNER OF SAID PROPERTY.___

*Statute*  in Violation of Chapter ___5-12(e)___

of the ordinance code Village of Plainfield.

### OATH

The undersigned being duly sworn on oath says that the foregoing charge is true.

SIGNED: _____
Complainant

Subscribed and sworn to before me

this __20__ day of __June__, 20 _06_.

_____  _Sarah Baca_
Judge or Notary Public

Plainfield Case No. __06-5864__

OFFICIAL SEAL
SARAH BACA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-1-2007

EXHIBIT
B

STATE OF ILLINOIS,  } ss.
COUNTY OF WILL,  }

IN THE CIRCUIT COURT OF THE 12TH JUDICIAL CIRCUIT
WILL COUNTY

**Village of Plainfield**
**A Municipal Corporation**
vs.

MURPHY, PAMELA S.

16141 FARMINGDALE

PLAINFIELD, IL 60544

Defendant

**BRANCH B GENERAL DIVISION**

Case No._____

## COMPLAINT

### CHARGE

On this __20__ day of _____JUNE_____, 20_06_, complainant

_____OFFICER J. KOCK_____ charges the commission of an offense as follows:

*Date*　　on __JUNE 15_____, 20_06_, at and within the village

of Plainfield, Will County, Illinois.

*Defendant*　__PAMELA S. MURPHY_____ a ~~male~~ female person,

*Offense*　committed the offense of__PARENTAL LIABILITY; PERMITTING UNLAWFUL__

__OPERATION OF MOTORIZED VEHICLE__

*Nature and Elements of Offense*　in that, __PAMELA S. MURPHY, THE PARENT OF JACOB MURPHY, A MINOR,__

__PERMITTED AND/OR ALLOWED JACOB TO OPERATE A FOUR WHEELER (A__

__MOTORIZED PLAY VEHICLE) ON PRIVATE PROPERTY WITHIN THE VILLAGE__

__OF PLAINFIELD, WITHOUT THE CONSENT OF THE OWNER OF SAID PROPERTY.__

*Statute*　in Violation of Chapter __5-12(e)__

of the ordinance code Village of Plainfield.

### OATH

The undersigned being duly sworn on oath says that the foregoing charge is true.

SIGNED: _____
Complainant

Subscribed and sworn to before me

this __20__ day of __June__, 20_06_.

*EXHIBIT*
*tabbies*

Plainfield Case No. __06-5864__

OFFICIAL SEAL
SARAH BACA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-1-2007

_____
~~Judge or~~ Notary Public

STATE OF ILLINOIS, } ss.
COUNTY OF WILL,

IN THE CIRCUIT COURT OF THE 12TH JUDICIAL CIRCUIT
WILL COUNTY

**Village of Plainfield**
**A Municipal Corporation**
**vs.**

MURPHY, JACOB E.

16141 FARMINGDALE

PLAINFIELD, IL 60544

Defendant

BRANCH B GENERAL DIVISION

Case No._____

## COMPLAINT

### CHARGE

On this __20__ day of _____JUNE_____, 20_06_, complainant
_____OFFICER J. KOCK_____ charges the commission of an offense as follows:

*Date*     on ___JUNE 15_____, 20_06_, at and within the village

of Plainfield, Will County, Illinois.

*Defendant*     ___JACOB E. MURPHY_____ a ~~female~~ male person,

*Offense*     committed the offense of___UNLAWFUL OPERATION OF MOTORIZED

_____PLAY VEHICLE UPON PRIVATE PROPERTY_____

*Nature*     in that, _JACOB OPERATED A FOUR WHEELER (MOTORIZED PLAY VEHICLE)_
*and*
*Elements*     _ON PRIVATE PROPERTY LOCATED WITHIN THE VILLAGE OF PLAINFIELD,_
*of*
*Offense*     _WITHOUT THE CONSENT OF THE OWNER OF SAID PRIVATE PROPERTY._

*Statute*     in Violation of Chapter __5-12(c)(2)__

of the ordinance code Village of Plainfield.

### OATH

The undersigned being duly sworn on oath says that the foregoing charge is true.

SIGNED: _____
Complainant

Subscribed and sworn to before me

this __20__ day of __June_____, 20_06_.

_____
~~Judge~~ or Notary Public

Plainfield Case No. __06-5864__

OFFICIAL SEAL
SARAH BACA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-1-2007

EXHIBIT
B
tabbies.

STATE OF ILLINOIS, } ss.
COUNTY OF WILL,

IN THE CIRCUIT COURT OF THE 12TH JUDICIAL CIRCUIT
WILL COUNTY

**Village of Plainfield**
**A Municipal Corporation**
vs.

MURPHY, JACOB E

16141 FARMINGDALE

PLAINFIELD, IL 60544

Defendant

BRANCH B GENERAL DIVISION

Case No._____

## COMPLAINT

### CHARGE

On this ___20___ day of _____JUNE_____, 20_06_, complainant

_____OFFICER J. KOCK_____ charges the commission of an offense as follows:

*Date*        on _____JUNE 15_____, 20_06_, at and within the village

of Plainfield, Will County, Illinois.

*Defendant*    _____JACOB E. MURPHY_____ a ~~female~~ male person,

*Offense*     committed the offense of___UNLAWFUL OPERATION OF MOTORIZED VEHICLE

_____ON PLAINFIELD TOWNSHIP PROPERTY_____

*Nature*      in that, _JACOB OPERATED A FOUR WHEELER ON PRIVATE PROPERTY CONTROLLED
*and*
*Elements*    _AND/OR USED BY THE PLAINFIELD TOWNSHIP PARK DISTRICT, LOCATED_
*of*
*Offense*     _BETWEEN RENWICK AND FRASER ROADS, IN THE VILLAGE OF PLAINFIELD._

*Statute*     in Violation of Chapter ___III, SECTION 1, PARAGRAPH A___

of the ordinance code Village of Plainfield.

### OATH

The undersigned being duly sworn on oath says that the foregoing charge is true.

SIGNED: _____
Complainant

Subscribed and sworn to before me

this __20__ day of __June,__ 20_06_.

EXHIBIT B

Plainfield Case No. ___06-5864___

OFFICIAL SEAL
SARAH BACA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-1-2007

_____
~~Judge~~ or Notary Public