**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MARK E. MURPHY and PAMELA S. MURPHY,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **No. 08 CV 3293** |
| **v.** ) | |
| ) | **Judge Joan H. Lefkow** |
| **VILLAGE OF PLAINFIELD, a municipal corporation, PLAINFIELD TOWNSHIP, PLAINFIELD PARK DISTRICT, GREG BOTT and JOAN MEYERS, individually,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Mark E. Murphy and Pamela S. Murphy (collectively, "the Murphys"), filed an

eight-count complaint in which they named five defendants: the Village of Plainfield, Plainfield

Township, Plainfield Park District, Greg Bott, and Joan Meyers. Count I is a claim against the

Village of Plainfield and Plainfield Township for negligent trespass. Count II is a claim against

the Village of Plainfield for willful and wanton conduct. Count III is a claim against the Village

of Plainfield and Plainfield Township for intentional trespass. Counts IV and V allege that the

Village of Plainfield and Plainfield Township have committed unconstitutional takings in

violation of article 1, section 15 of the Illinois State Constitution and the Fifth and Fourteenth

Amendments of the United States Constitution. Count VI is a state law claim against the Village

of Plainfield, Plainfield Park District, Greg Bott, and Joan Meyers for malicious prosecution.

Count VII is a 42 U.S.C. § 1983 claim alleging that the Village of Plainfield, Plainfield Park

District, Greg Bott, and Joan Meyers deprived the Murphys of "their inalienable right to be free

from governmental harassment and intimidation." Am. Compl. at 16. Count VIII is a *Monell* claim against the Village of Plainfield, Plainfield Park District, Greg Bott, and Joan Meyers.[1]

The court, having previously decided in part the defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6), now addresses the remaining portions of those motions: (1) the Village of Plainfield and Joan Meyers's motion to dismiss [#20], insofar as it deals with issues of immunity and unconstitutional takings; (2) Plainfield Park District and Greg Bott's motion to dismiss [#22], insofar as it deals with the timeliness of plaintiffs' malicious prosecution claim; and (3) Plainfield Township's motion to dismiss [#53], insofar as it deals with the issue of immunity.[2] For the reasons stated below, the remaining portions of the motions will be granted in part and denied in part.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In a ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint and draws reasonable inferences from those facts in favor of the plaintiff. *Dixon* v. *Page*, 291 F.3d 485, 586 (7th Cir. 2002). In order to survive a motion under Rule 12(b)(6), the complaint must provide the defendant with "fair notice of what the … claim is and the grounds upon which it rests." *EEOC* v. *Concentra Health Servs., Inc.*,

---

[1] Plaintiffs originally brought this action in the Circuit Court of Will County, Illinois. Defendants removed the case to this court pursuant to 28 U.S.C. § 1441. The court has jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331 and 1343 for the federal claims and 28 U.S.C. § 1367(a) for the supplemental state law claims.

[2] The court previously denied in all other respects the defendants' motion to dismiss, . *See* Dkt. Nos. 25, 26, 57.

496 F.3d 773, 776–77 (7th Cir. 2007) (citing *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 127 S.

Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)).  The allegations in the complaint must also be

"enough to raise a right to relief above a speculative level." *Twombly*, 127 S. Ct. at 1965.

## BACKGROUND

### I.     Damage to the Murphys' Property

The Murphys allege the following facts, which provide the foundation for Counts I–V of

their Amended Complaint ("the complaint").  The Murphys have lived at 16141 Farmingdale

Road ("the Murphys' property") in unincorporated Plainfield Township since 1989.  Prior to

1989, the plaintiffs' sister lived at the property for 10 years.  The Murphys' property is

surrounded by the Village of Plainfield, which is a municipal corporation formed under the

Illinois Municipal Code.

During the period spanning from 1979 to the present, the Village of Plainfield (the

"Village") and Plainfield Township (the "Township") approved multiple developments in and

around the Murphys' property.  The developments have caused an "abnormal surcharge" of

groundwater and aboveground flooding to their property.  Am. Compl. at 2.  Village and

Township officials ignored preliminary engineering reports indicating that the developments

raised problems relative to stormwater management.

Additional decisions made by the Village and Township have compounded water damage

to their property.  For example, the Village and Township allowed retention ponds that fail to

drain due to high groundwater levels.  The authorization of these ponds led to the adoption of a

custom and policy of pumping out retention ponds as a stormwater drainage method, which has

caused damage to their property.  Additionally, the Village and Township have allowed

neighboring subdivisions to release water from detention ponds, which has led to water flowing onto, across, and through the Murphys' property.

In 1993, a three-inch rain event would result in standing water on their property and that by 2004, a one-inch rain event would lead to "a small lake" on their property. Am. Compl. at 4. Also of note, the water table on the Murphys' property has risen and remains between 18 and 34 inches. Prior to 2004, the water table level had no effect on the foundation of the Murphys' home. Since 2004, the increased water table is above the Murphys' foundation, and improvements on the Murphys' property have been damaged and are under constant pressure.

The Village and Township were aware of the flooding and increased water table and attempted to remediate the water damage to the Murphys' property. According to the complaint, the Village and Township retained engineers and investigated the flooding and saturation issues on the Murphys' property. One of the Village and Township's attempts to remediate the problem was to place stormwater infrastructure on and under the Murphys' property, which they did without written permission from the Murphys. To install the stormwater infrastructure, the Village and Township excavated a portion of the Murphys' land. The Murphys allege that despite notifying the Township that the land remains partially excavated, repairs have yet to be completed.

The complaint alleges that a variety of additional harms have resulted from the flooding and other damage to the Murphys' property: the Murphys have missed a substantial amount of work in order to limit the damage to their residence; they have been forced to remove their pool and deck; their septic system intermittently rises to the surface, contaminating their property as well as downstream neighbors with fecal coliform bacteria. Also, on January 23, 2008, the Will

County Board of Review allegedly reassessed the Murphys' property and decreased the value by 75%.

Based on these allegations, the Murphys have asserted claims for negligent trespass (Count I), willful and wanton conduct (Count II), intentional trespass (Count III), and unconstitutional takings (Counts IV and V).

## II.      Prosecution of the Murphys

The Murphys allege the following additional facts which provide the foundation for Counts VI, VII, and VIII. On June 15, 2006, the Murphys were operating a utility vehicle near their property in Plainfield Township. The Murphys and their son, Jacob Murphy, were approached by Officer Koch of the Village of Plainfield. Officer Koch acknowledged the Murphys' flooding problem but told them that utility vehicles were not permitted on Plainfield Park District[3] property. The Murphys insisted that they were not operating the off-road vehicle on Park District property. Officer Koch informed the Murphys that he would talk to his supervisors and inform the Murphys of their decision on June 16, 2006.

On June 16, 2006, Officer Koch saw the Murphys at a baseball game and told them that he thought "a decision to prosecute [would] be made." Am. Compl. at 12. A decision to prosecute was made, and the Murphys appeared in court on August 4, 2006, at which time they pled not guilty to the charges.

According to the complaint, the Murphys later contacted Com Ed representative Craig Dixon, who they believed could verify that the land on which they had been operating the utility

---

[3] According to the complaint, Plainfield Park District is a special district of the Village of Plainfield formed under the authority of the Illinois legislature.

vehicle was not Plainfield Park District property.  Dixon contacted Joan Meyers, the prosecuting

attorney for the Village, on behalf of the Murphys.  Meyers told Dixon that the Plainfield Park

District had exclusive jurisdiction over the property behind the Murphy residence, which is

where the Murphys had been operating the vehicle.  Dixon told Meyers' that she was incorrect

and that the property was in fact owned by Com Ed, who had not signed or authorized the

complaint against the Murphys.  In August 2006, Dixon delivered to Meyers a copy of the lease

agreement between Com Ed and the Park District and pointed out that Com Ed owned the

property in question.  Meyers nevertheless refused to drop the charges against the Murphys.

On September 1, 2006, a bench trial commenced but was continued for further

evidentiary matters.  Just before the case was continued, defendant Greg Bott, an employee of

the Plainfield Park District, testified that he was unaware of any flooding on or near the Murphy

property.  According to plaintiffs, however, Bott had previously addressed the flooding issue

with representatives of Will County in 2005.  Bott's 2005 comments are part of the public record

and directly contradict his September 1, 2006 statements in court.

On October 6, 2006, the case was again set for trial.  It was later rescheduled to

November 6, 2006.  On November 6, 2006, Meyers allegedly offered to drop the charges against

the Murphys if their son, Jacob Murphy, would plead guilty.  The Murphys refused this offer.

Meyers then dismissed all of the charges.

As a result of these incidents, the Murphys claim they were forced to defend against a

frivolous claim, lost time from work, and suffered from emotional distress.  Based on these

allegations, the Murphys have asserted a state law claim for malicious prosecution (Count VI), a

§ 1983 claim (Count VII), and a *Monell* claim (Count VIII) against the Village, the Plainfield

Park District, Meyers, and Bott.

## DISCUSSION

**I.     Applicability of the Illinois Tort Immunity Act**

The Village of Plainfield and Plainfield Township argue that they are entitled to

immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity

Act (the "Illinois Tort Immunity Act") with respect to the claims asserted in Counts I, II, and III.

The Murphys, on the other hand, argue that the immunities provided by that statute do not apply

given the facts of this case and the duties owed by the defendant municipalities to the plaintiffs.

The Illinois Tort Immunity Act serves to protect local public entities and public

employees from liability arising from the operation of government.  *Van Meter* v. *Darien Park

Dist.*, 799 N.E.2d 273, 279, 207 Ill. 2d 359, 278 Ill. Dec. 555 (2003) (citing 745 Ill. Comp. Stat.

10/1-101.1(a)).  The Act does not create new duties; it merely "codifies those duties existing at

common law, to which subsequently delineated immunities apply."  *Vill. of Bloomingdale* v.

*CDG Enters., Inc.*, 752 N.E.2d 1090, 1096, 196 Ill. 2d 484, 256 Ill. Dec. 848 (2001).  Since the

statute was enacted in derogation of the common law, it must be strictly construed.  *Snyder* v.

*Curran Twp.*, 657 N.E.2d 988, 994, 167 Ill. 2d 466, 212 Ill. Dec. 643 (1995).  Unless an

immunity provision applies, municipalities are liable in tort to the same extent as private parties.

*Van Meter*, 799 N.E.2d at 279 (citing *Barnett* v. *Zion Park Dist.*, 665 N.E.2d 808, 171 Ill. 2d

378, 386, 216 Ill. Dec. 550 (1996)).

The Murphys allege that the Village of Plainfield and Plainfield Township breached their

duty to the plaintiffs by "caus[ing] and allow[ing] flooding and sewage in its control to enter

onto and trespass upon and under the property owned by the plaintiffs." Am. Compl. at 7. There is no dispute that local units of government bear a common-law duty not to increase the natural flow of surface water onto the property of an adjacent landowner. *Van Meter*, 799 N.E.2d at 279.

Having determined that such a duty exists, the court must next consider whether provisions of the Illinois Tort Immunity Act immunize the defendant municipalities from liability for alleged breaches of that duty. *Id.* at 279–80. The Act adopted the general principle that "local governmental units are liable in tort but limited this [liability] with an extensive list of immunities based on specific government functions." *Zimmerman v. Vill. of Skokie*, 697 N.E.2d 699, 707, 183 Ill. 2d 30, 231 Ill. Dec. 914 (1998) (internal quotation marks and citations omitted).

The Illinois Supreme Court has emphasized, moreover, that "the existence of a duty and the existence of an immunity are separate issues." *Barnett*, 665 N.E.2d at 813. Thus, the dispositive question is whether the Illinois Tort Immunity Act insulates the defendants from the plaintiffs' otherwise viable common law tort claims. *See Vill. of Bloomingdale*, 752 N.E.2d at 1096 ("[T]o determine whether [an] entity is liable for the breach of a duty, we look to the Tort Immunity Act, not the common law.").

Defendants assert two separate bases for immunity under the Illinois Tort Immunity Act. First, they argue that they are entitled to *absolute* immunity under 745 Ill. Comp. Stat. 10/2-104. Second, they contend that even if they are not granted absolute immunity with respect to all of plaintiffs' allegations, they are nevertheless entitled to *discretionary* immunity under 745 Ill. Comp. Stat. 10/2-201 and 10/2-109.

## A.     Absolute Immunity Under Section 2-104

Section 2-104 of the Illinois Tort Immunity Act grants absolute immunity to a local public entity for an injury caused by its issuance or denial of any permit, license, certificate, approval, or similar authorization where the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued or denied.  745 Ill. Comp. Stat. 10/2-104.  The Village and Township argue that in Counts I, II and III, plaintiffs are attempting to hold the municipalities liable for injuries that resulted from their approval of subdivision developments near the Murphys' property.  The defendant municipalities argue that they are absolutely immune under section 2-104 from claims stemming from the approval of subdivision developments.

It is clear from the plain language of section 2-104 that where a public entity or its employee is authorized by enactment to determine whether or not a subdivision should be approved, the public entity is granted immunity from any injury resulting from that decision.  *See* 745 Ill. Comp. Stat. 10/2-104.  Here, plaintiffs do not dispute the Village's assertion that the Village's board of trustees is authorized under the Village of Plainfield Ordinance Code to certify and approve or reject any subdivision development.  Village's Mot. (Dkt. No. 20), at 2 (citing Plainfield, IL., Ord Nos. 2091, §§ 3-1-3, 3-2-1 (2002) ("[N]o land shall . . . be subdivided . . . nor any street laid out, nor any improvements made to the land, until the plat or plats of subdivision or street improvements shall have been certified and approved by action of the board of trustees of the village.")); *see also* 65 Ill. Comp. Stat. 5/11-13-1, 11-15-1 (providing that the corporate authorities of each Illinois municipality "may provide, by ordinance, that any map, plat, or subdivision of any block, lot, sub-lot, or part thereof, or of any piece or parcel of land,

shall be submitted to the corporate authorities, or to some officer to be designated by them, for their or his approval"). Thus, the authorization of new subdivisions by the Village's board of trustees is within the scope of immunity provided to municipalities under section 2-104 of the Illinois Tort Immunity Act, and the Village is immune from any alleged injuries resulting from such authorizations. *See Vill. of Bloomingdale*, 752 N.E.2d at 1100 (finding that the conduct of the Village of Bloomingdale in denying a rezoning petition fell squarely within section 2-104 of the Illinois Tort Immunity Act because "the Village and its officials were authorized to either grant or deny [the] petition for rezoning and site plan approval").

The Murphys contend that the Village and Township should not be granted absolute immunity because the municipalities approved subdivision developments despite the fact that engineering reports demonstrated stormwater management problems. Under Illinois law, however, the alleged motives behind the issuance or denial of a permit or similar authorization are irrelevant in the analysis of municipal immunity under section 2-104. *See Village of Bloomingdale*, 752 N.E.2d at 1097-98. Indeed, the provision has been broadly applied, providing absolute immunity even where the conduct of the governmental entity was allegedly based on "corrupt or malicious motives." *Id.* at 1098.

The court thus concludes that the Village and Township are immune under section 2-104 with respect to any injuries arising from the municipalities' authorization of subdivision developments. To the extent that plaintiffs' claims in Counts I, II and III are predicated on the defendant municipalities' authorization of the subdivision developments, such claims must be dismissed.

Injuries resulting from the authorization of the subdivisions, however, are not the only injuries asserted in the first three counts of the complaint. The Murphy's also allege, for example, that "the Village and Township had a duty to construct, own, operate, manage, maintain and operate [their] stormwater system so that said system would not unreasonably increase the quantity and force of water and/or sewage onto [the Murphys' property]." Am. Compl. at 2. The Murphys claim that the violation of this duty by the defendants led to damage to their property. Similarly, the Murphys claim that the defendant municipalities authorized detention ponds which failed to drain, thereby adopting a custom and policy of pumping out the ponds as a stormwater drainage method; allowed neighboring subdivisions to release water from detention ponds, thereby flooding plaintiffs' property; placed stormwater infrastructure on plaintiffs' property without plaintiffs' permission; and caused the Murphys' septic system to fail. The defendant municipalities have failed to demonstrate that they are entitled to absolute immunity under section 2-104 with respect to any of these allegations, which are distinct from those stemming from the authorization of local subdivisions.

### B. Discretionary Immunity Under Sections 2-201 and 2-109

The Village and Township also argue that they are immune from liability under sections 2-201 and 2-109 of the Illinois Tort Immunity Act for the injuries alleged in Counts I, II and III. Section 2-201 provides,

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 Ill. Comp. Stat. 10/2-201. Where section 2-201 is satisfied such that a public employee would not be liable, the local public entity that employs her is likewise immune from liability

under section 2-109 of the Illinois Tort Immunity Act. 745 Ill. Comp. Stat. 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.").

The Illinois Supreme Court has stated that for purposes of section 2-201, "the employee's position may involve either determining policy or exercising discretion, but the employee's act or omission must be both a determination of policy and an exercise of discretion.'" *Arteman* v. *Clinton Cmty. Unit Sch. Dist. No. 15*, 763 N.E.2d 756, 763, 198 Ill.2d 475, 261 Ill. Dec. 507 (2002) (internal quotation marks and citations omitted). The key question under section 2-201 is thus whether the determination made by the public employee was a "discretionary policy determination." *Id.* at 764. Because the immunity afforded under the Illinois Tort Immunity Act generally operates as an affirmative defense, government entities seeking to invoke such immunity bear the burden of "properly raising and proving their immunity under the Act." *Van Meter*, 799 N.E.2d at 280. In order to do so, the entities must establish the employee's act was both (1) a discretionary decision and (2) a determination of policy. *Id.* at 285–86.

With respect to the first element, cases construing the Illinois Tort Immunity Act have recognized a distinction between discretionary duties and ministerial duties. Under Illinois law, a municipality is immune from liability in its performance of discretionary tasks but cannot claim immunity for the improper performance of ministerial tasks. *Vill. of Bloomingdale*, 752 N.E.2d at 1099 (citing *In re Chicago Flood Litigation*, 680 N.E.2d 265, 272, 176 Ill.2d 179, 193–94, 223 Ill. Dec. 532 (1997)).

The Illinois Supreme Court has defined the terms "discretionary" and "ministerial" as follows:

[D]iscretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act.

*Harrison* v. *Hardin County Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848, 852, 197 Ill.2d 466, 259 Ill. Dec. 440 (2001) (internal quotation marks and citations omitted).  Because there is no precise formulation to distinguish discretionary acts from ministerial acts, a determination must be made on a case-by-case basis.  *Van Meter*, 799 N.E.2d at 280.  The court considers factors such as whether the decision (1) is based on tailored statutory and regulatory guidelines that place constraints on the decisions of officials, *id.* at 281 (2) is absolute, certain and imperative, involving the mere execution of set tasks, with nothing left for judgment or discretion, *Vill. of Bloomingdale*, 752 N.E.2d at 1099; and (3) involves the exercise of personal deliberation and judgment in deciding either whether to perform a particular act or how that act should be performed, *Wrobel* v. *City of Chicago*, 742 N.E.2d 401, 405–06, 318 Ill. App. 3d 390, 252 Ill. Dec. 151 (Ill. App. Ct. 1st Dist. 2000).

The Murphys assert that the Village and Township had a duty to maintain and operate its stormwater system so as not to unreasonably increase the quantity and force of water and sewage on the Murphys' property.  The defendants have not identified, however, what public official has the authority to manage the stormwater system.  Nor have the defendants articulated the mechanisms that guide the decision-making processes behind maintaining the stormwater system.  An analysis of such mechanisms and processes is essential to determining whether the decisions at issue in this case were discretionary or ministerial.

The Murphys also claim that the defendants (1) authorized detention ponds which failed to drain, thereby adopting a custom and policy of pumping out retention ponds as a stormwater

drainage method; (2) allowed neighboring subdivisions to release water from detention ponds, thereby flooding plaintiffs' property; (3) placed stormwater infrastructure on plaintiffs' property without plaintiffs' permission; and (4) caused the Murphys' septic system to fail. While such actions could conceivably be the byproduct of discretionary acts by public officials, the defendant municipalities have failed to conclusively demonstrate as much.

Under the Illinois Tort Immunity Act, the defense bears the burden of "properly raising and proving their immunity under the Act." *Van Meter*, 799 N.E.2d at 280. At this stage of the present litigation, the defendants have not met that burden. Their motions to dismiss Counts I, II, and III on the basis of discretionary immunity under sections 2-201 and 2-109 must therefore be denied.

## II.     Takings Claims Under the United States and Illinois Constitutions

In Counts IV and V, the Murphys allege that the Village of Plainfield and Plainfield Township have committed unconstitutional takings in violation of article 1, section 15 of the Illinois State Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. The defendant municipalities argue that both counts should be dismissed because the facts provided by the Murphys illustrate that the plaintiffs have only been subjected to *temporary* accumulations of water on their property.

The United States Supreme Court has considered whether flooding of private property that results from public improvements authorized by the government can be considered an unconstitutional taking. The Court has "consistently distinguished between flooding cases involving a permanent physical occupation, on the one hand, and cases involving a more temporary invasion, or government action outside the owner's property that causes consequential

damages within, on the other.  A taking has always been found only in the former situation."

*Loretto* v. *Teleprompter Manhattan CATV, Corp.*, 458 U.S. 419, 428, 102 S. Ct. 3164, 73 L. Ed.

2d 868 (1982) (emphasis added).  To constitute a taking, the water overflow must be a direct

result of a structure imposed by the governmental entity and constitute an actual, permanent

invasion of the land, amounting to an appropriation of, and not merely an injury to, the property.

*Sanguinetti* v. *United States*, 264 U.S. 146, 149, 44 S. Ct. 264, 68 L. Ed. 608 (1924).  The Court

has thus set a high bar for proving that the government has committed an unconstitutional taking

under federal law where the claim arises from flooding of the plaintiff's land.

The bar has been set similarly high for takings claims under the Illinois State

Constitution.  Illinois courts have held that "[w]here an adjacent or abutting landowner is

inundated with water resulting from the construction of a public improvement, the question of

whether a taking has occurred turns on the temporal nature of the inundation."  *Luperini* v.

*County of Du Page*, 637 N.E.2d 1264, 1268, 265 Ill. App. 3d 84, 202 Ill. Dec. 528 (Ill App. Ct.

2d Dist. 1994) (citing *Herget Nat'l Bank of Pekin* v. *Kenney*, 475 N.E.2d 863, 105 Ill. 2d 405,

86 Ill. Dec. 484 (1985); *Pratt* ex. rel. *Pratt* v. *Rosenfield*, 77 N.E.2d 697, 399 Ill. 247 (1948)).

Where the public improvement causes only temporary accumulations of water on the subject

property, a taking has not occurred.  *Id.* at 1268.  In contrast, where water permanently inundates

the subject property as a result of the construction of a public improvement, courts have held that

"a physical invasion tantamount to a taking has occurred."  *Id.*

In this case, the Murphy's complaint does not make clear whether the water-related

harms to their property are temporary or permanent.  For example, the Murphys have alleged that

as a result of the construction of local developments surrounding their home, the water table on

their property has risen and caused permanent damage to the structure and foundation of their home. The Murphys have also alleged that the Will County Board of Review reduced the assessed valuation of their property by 75%, which might be indicative of a more permanent inundation. Additionally, the Murphys claim that the Village and Township have excavated portions of their property and installed stormwater infrastructure without the Murphy's written permission.

The court must therefore deny the defendant municipalities' motions to dismiss Counts IV and V.

**III.    Timeliness of the Malicious Prosecution Claim (Count VI)**

In Count VI, plaintiffs assert a claim against the Village of Plainfield, the Plainfield Park District, Greg Bott, and Joan Meyers for malicious prosecution. Joan Meyers argues that because the Murphys did not file their malicious prosecution claim against her within the one-year limitations period prescribed by the Illinois Tort Immunity Act, Count VI of the complaint against her is time-barred. The Village of Plainfield, in turn, argues that because the plaintiffs cannot impose liability on Meyers in Count VI, section 2-109 of the Illinois Tort Immunity Act dictates that the Village is likewise immune from liability. *See* 745 Ill. Comp. Stat. 10/2-109.

Section 8-101 of the Illinois Tort Immunity Act provides that "[n]o civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 Ill. Comp. Stat. 10/8-101(a). The plaintiffs do not dispute either that the Village is a "local public entity" as that term is defined in the Act, *see* 745 Ill. Comp. Stat. 10/1-206 (defining local public entity to include "township, municipality, municipal corporation, . . . and

16

all other local governmental bodies"), or that Meyers is an "employee" for purposes of the Act because her conduct occurred during the course and scope of her employment with the Village.

A claim for malicious prosecution does not accrue until the underlying prosecution of which plaintiff complains has terminated in her favor. *Ferguson* v. *City of Chicago*, 820 N.E.2d 455, 459 213 Ill. 2d 94, 289 Ill. Dec. 679 (2004). In the present case, it is undisputed that the underlying criminal case that provides the basis for the Murphys' claim was terminated on November 6, 2006.

The Murphys filed their original complaint on October 25, 2007, but that complaint did not name Joan Meyers as a defendant. Meyers was not added as a defendant until May 12, 2008, when the Murphys filed their amended complaint.

In their response, plaintiffs argue that the date of filing of their original complaint, rather than the amended complaint, is determinative. Plaintiffs' fail, however, to explain why their amendment relates back to the filing date of the original complaint. When a new defendant is added to an amended complaint after the statute of limitations has run, then only under certain circumstances will the amendment relate back to the original pleading. Fed. R. Civ. P. 15(c)(1); 735 Ill. Comp. Stat. 5/2-616(d).

Under federal law, an amendment will generally relate back to correct a misnomer of a defendant where the proper defendant is already before the court and the effect is merely to correct the name under which the defendant has been sued; but a new defendant generally cannot be substituted or added by amendment after the statute of limitations has run. *Worthington* v. *Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993). Rule 15(c) permits relation back only where a new defendant "knew or should have known that the action would have been brought against it, but

for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Under Illinois law, relation back is similarly permitted for a new defendant only where that party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her." 735 Ill. Comp. Stat. 5/2-616(d); *accord Estate of Henry by Henry* v. *Folk*, 674 N.E.2d 102, 103–04, 285 Ill. App. 3d 262, 220 Ill. Dec. 831 (Ill. App. Ct. 1st Dist. 1996); *Household Commercial Fin. Servs., Inc.* v. *Trump*, 863 F. Supp. 735, 741–42 (N.D. Ill. 1994).

Meyers was not added due to a case of mistaken identity, nor were plaintiffs attempting to correct a misnomer, nor should Meyers have known that the action would have been brought against her but for a mistake concerning her identity. Thus, under either the federal or the state approach, it is clear that plaintiffs did not file their claim for malicious prosecution against Meyers until more than six months after the one-year limitations period under 745 Ill. Comp. Stat. 10/8-101(a) had expired. The malicious prosecution claim against Meyers is thus time-barred and must be dismissed.

The Village further argues that under section 2-109 of Illinois Tort Immunity Act, the Murphys' malicious prosecution claim against the Village must also be dismissed. Section 2-109 provides that a "local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 Ill. Comp. Stat. 10/2-109. Here, Meyers was clearly acting within the scope of her employment for the Village when she, as Village Attorney, brought criminal charges against the Murphys. Because she cannot be held liable under Count VI, the malicious prosecution claim against the Village must be dismissed as well.

Additionally, Plainfield Park District, like defendant Meyers, seeks dismissal of the malicious prosecution claim against it pursuant to 745 Ill. Comp. Stat. 10/8-101(a), arguing that the claim is time barred. Plaintiffs do not dispute that Plainfield Park District constitutes a "local entity" under section 8-101.[4] Plaintiffs likewise do not dispute that, as with Meyers, they did not name the Plainfield Park District as a defendant until they filed their amended complaint on May 12, 2008, more than eighteen months after the malicious prosecution claim had accrued. Plaintiffs have not suggested any basis on which their malicious prosecution claim against Plainfield Park District in the amended complaint might relate back to the filing date of the original complaint. The malicious prosecution claim against Plainfield Park District is thus time barred and must be dismissed as well.

## IV. Meyers's Assertion of Prosecutorial Immunity from the § 1983 Claims

Counts VII alleges that the Village of Plainfield, Plainfield Park District, Greg Bott, and Joan Meyers violated 42 U.S.C. § 1983 in depriving the Murphys of "their inalienable right to be free from governmental harassment and intimidation." Am. Compl. at 16. Count VIII is an additional claim against the same defendants alleging that their acts constituted a *Monell* violation under federal law.

Defendant Meyers's argues she is entitled to absolute immunity from the claims asserted in Counts VII and VIII. It is well established that prosecutors are absolutely immune from

---

[4]  In response to the three motions to dismiss filed by the various defendants, plaintiffs have filed only one response memorandum, which states that it is "[plaintiffs'] response to Defendants, Village of Plainfield and Joan Meyers, motion to dismiss." Dkt. No. 39, at 1 (Sept. 16, 2008). Thus, plaintiffs have apparently failed to file a response to Plainfield Park District and Greg Bott's motion to dismiss, thought the court granted leave and provided plaintiffs more than three weeks to do so. Dkt. No. 26 (July 31, 2008). Nevertheless, to the extent that the arguments asserted by plaintiffs in their response are applicable to Plainfield Park District's motion to dismiss, the court has considered them.

damages under § 1983 for actions taken in initiating and pursuing a criminal prosecution, as well as in presenting the state's case. *Imbler* v. *Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). As the Seventh Circuit has recognized, "Prosecutors are absolutely immune from suits for monetary damages under § 1983 for conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Smith* v. *Power*, 346 F.3d 740, 742 (7th Cir. 2003) (quoting *Imbler*, 424 U.S. at 430). These standards apply to a prosecutor's acts in initiating a civil proceeding as well, so long as "the prosecutor is 'functioning in an enforcement role analogous' to his role in criminal proceedings." *Id.* at 742 (quoting *Mendenhall* v. *Goldsmith*, 59 F.3d 685, 691 (7th Cir.1995)). Moreover, prosecutors are entitled to absolute immunity even when they act "maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Id.* at 742.

Plaintiffs suggest that Meyers's prosecution of them was wrongfully initiated and pursued in retaliation for their complaints about water damage to their property. The Murphys further argue that Meyers, in an effort to intimidate the Murphys, prosecuted the plaintiffs for a criminal violation with respect to which the Village of Plainfield and the Park District were without jurisdiction. Allegations of this sort do not negate the absolute immunity afforded to Meyers for §1983 claims. It is clear that Meyers's alleged acts consist of her initiating and pursuing the prosecution of the Murphys in her role as Village Attorney—conduct that is intimately associated with the judicial phase of the criminal process. *See id.* at 742. Meyers is thus immune from the § 1983 claims alleged against her in Counts VII and VIII, and her motion to dismiss those claims must be granted.

## CONCLUSION

For the foregoing reasons, the remaining portions of the Village of Plainfield and Joan Meyers's motion to dismiss [#20], Plainfield Park District and Greg Bott's motion to dismiss [#22], and Plainfield Township's motion to dismiss [#53] are granted in part and denied in part. To the extent that any of plaintiffs' claims in Counts I, II, and III are predicated on the defendant municipalities' authorization of subdivision developments, such claims are dismissed. Plaintiffs' malicious prosecution claim in Count VI is dismissed as to defendants Joan Meyers, Village of Plainfield, and Plainfield Park District. The § 1983 claims in Counts VII and VIII are dismissed as to defendant Joan Meyers. The remaining portions of defendants' motions to dismiss are otherwise denied.

Dated: March 31, 2009                    Enter:_____
                                                JOAN HUMPHREY LEFKOW
                                                United States District Judge