# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **MARK E. MURPHY and** | ) | |
| **PAMELA S. MURPHY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 08 CV 3293** |
| | ) | |
| **v.** | ) | **Judge Joan H. Lefkow** |
| | ) | |
| **VILLAGE OF PLAINFIELD, a municipal** | ) | |
| **corporation, PLAINFIELD TOWNSHIP,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

In this § 1983 civil rights action, plaintiffs, Mark E. Murphy and Pamela S. Murphy ("the Murphys"), claim that the Village of Plainfield ("the Village") and Plainfield Township ("the Township") took their property in violation of the takings clause of the Fifth and Fourteenth Amendments of the United States Constitution (Count V). The Murphys also claim that the Village deprived them of equal protection of the laws based on a class-of-one theory of selective prosecution. (Count VII ). Am. Compl. at 16. They also assert against the Village municipal liability under *Monell* v. *Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (Count VIII).[1] The remainder of the claims rely on Illinois law: Count I is a claim against the Village and the Township for negligent trespass. Count II is a claim against the Village for willful and wanton conduct. Count III is a claim against the Village and the Township for intentional trespass. Count IV alleges violation of the

---

[1] This court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 and over the state law claim pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391.

takings clause of the Constitution of Illinois, art. 1, sec. 15.[2]  The Village has moved for

summary judgment with respect to all claims against it (counts I, II, III, IV, V, VII, and VIII).

Likewise, the Township seeks summary judgment on all claims against it (counts I, III, IV, and

V).  [Dkts. 123, 126].  The court will grant summary judgment in favor of the defendants on

Counts VII and VIII.  The remainder of the case must be remanded to the Twelfth Judicial

Circuit Court, Will County, Illinois.

## BACKGROUND[3]

### I.      The Murphys' Flooding Issues

In 1990, the Murphys purchased 16141 South Farmingdale Drive in unincorporated

Plainfield Township for $145,000.  The Murphys' property is surrounded by subdivisions and

developments annexed by and located within the Village.  Shortly after the Murphys moved into

their home, the Village annexed and began developing three subdivisions surrounding their

property, Spangler Farms, Vintage Harvest, and Arbor Place.  In 1993, during the development

of the Vintage Harvest subdivision, the Murphys noticed standing water in their backyard.  Their

property continued to flood as and after the Village developed additional subdivisions.  The

Murphys believed that the additional subdivisions were the cause of their flooding issues.  In

2006, water seeped into the eastern portion of their basement.  Additionally, in 2006, the

Murphys removed their pool and decking material from their backyard because the structures

---

[2]  On March 31, 2009, this court granted, in part, defendants' motions to dismiss, dismissing (1) counts I, II, and III to the extent that they were predicated on the Village's or Township's authorization of subdivision developments; (2) count VI as to the Village, the Park District, and Meyers; and (3) count VII and VIII as to Meyers.  [Dkt. 60].  On November 2, 2010, pursuant to a stipulation to dismiss [dkt. 88], the court dismissed the Park District and Botts with prejudice.  [Dkt. 104].

[3]  The facts are stated in the light most favorable to the Murphys and are taken from the parties' statements of facts and supporting documents pursuant to Local Rule 56.1.

began to buckle. As a result of the problems with flooding, the Township's tax assessor reduced the Murphys' home assessment value by 75 percent.

## II.     The Village's Maintenance of Stormwater Systems and Detention Ponds

The Village's Department of Public Works maintained the stormwater systems within the Village. Before approving the construction of new subdivisions, the Village required subdivision developers to submit a proposal to its Planning Committee, which would consult with Village engineers about the proposed development. A Village Plan Commission would then review the plans and recommend to the Village President and Board of Trustees whether to approve the subdivision. If questions arose at any time during the review process, the Village would return the plan to the developer to address the Village's concerns. The Spangler Farms, Vintage Harvest, and Arbor Place subdivisions all passed the Village's review process before their annexation.

These subdivisions each included at least one pre-engineered stormwater detention pond. Periodically, the Department of Public Works, pursuant to the Village's Drainage and Detention Ordinance, drained the detention ponds. The ordinance permitted pumping the detention ponds when "draining by gravity [was] not feasible."  (Village L.R. 56.1, Ex. 4; § 713)  Allen Persons, the Village Director of Public Works, testified that pumping the detention ponds alleviated the effects of flooding resulting from excess stormwater in the surrounding subdivisions. The Village pumped water from the detention ponds onto land and the water then seeped into the ground. The Township played no role in developing or maintaining the subdivisions or the detention ponds contained therein.

## III.    The 2007 Remediation Project

3

Sam Reichert, the Township's Highway Commissioner, learned about the full extent of the Murphys' flooding issues. Reichert testified that the Township provided the Murphys with a gas-powered pump to remove water from the area behind their home and an adjacent bike path that ran on an easement maintained by ComEd. The standing water behind their property caused underground septic fluids to rise to the ground. Reichert believed that this contaminated water was hazardous for other Township residents. Although the Murphys did not live within the Village boundaries, Allen Persons was concerned about contaminated water on the bike path behind the Murphys' home.

In 2007, the Township and the Village implemented a plan to alleviate the flooding issues at the Murphys' property. The Murphys allowed the Township and the Village to install tile and piping infrastructure on their property, which would dispose of the water collecting at the rear of the property. In total, the Township spent $40,000 on the project. The installation of the stormwater infrastructure reduced the standing water at the rear of the Murphys' property; however, the Murphys began experiencing water seepage into the north section of their basement after the remediation project.

## IV.    The Village's Prosecution of the Murphys

In June 2006, Officer Koch, a Village police officer, ticketed the Murphys for riding their all-terrain vehicles on the Com Ed easement behind their home. While Officer Koch acknowledged that there had been numerous complaints about ATV-riding on that easement, he issued a ticket only to the Murphys. Officer Koch testified that he believed that the Village had jurisdiction over the easement after speaking with Joan Meyers (the Village's attorney), who informed Officer Koch that the Murphys did not have permission to ride ATVs on Com Ed

4

property. Com Ed, however, had granted the Murphys permission to operate ATVs on the Com Ed easement and made this fact known to Meyers during the pendency of the prosecution. Meyers ultimately decided to drop the charge against the Murphys.

## SUMMARY JUDGMENT STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) & advisory committee notes (1963 amend.). While the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, *Anderson* v. *Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), where a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Id*. at 323. In response, the non-moving party cannot rest on bare pleadings alone but must use evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id*.; *Insolia* v. *Phillip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).

## DISCUSSION

### I.     The Village and Township's Motions to Strike

The Village and the Township both filed motions to strike portions of the Murphys' statement of facts for violating Northern District of Illinois Local Rule 56.1. The Township and the Village contend that the Murphys violated Local Rule 56.1(b)(3) by failing to provide record

cites for their factual assertions in response to the Township and Village's Rule 56.1 statements

of facts. Local Rule 56.1(b)(3) provides that the non-movant's response to the movant's

statement of facts must include "in the case of any disagreement, specific references to the

affidavits, parts of the record, and other supporting materials relied upon." N.D. L.R.

56.1(b)(3)(B). "An answer that does not deny the allegations in the numbered paragraph with

citations to supporting evidence in the record constitutes an admission." *Michas* v. *Health Cost*

*Controls of Ill., Inc.*, 209 F.3d 687, 689 (7th Cir. 2000) (quoting *McGuire* v. *United Parcel Serv.*,

152 F.3d 673, 675 (7th Cir. 1998)). The Murphys dispute the Village's and Township's

statements of facts in paragraphs 18, 20, 25, 29, 33, 39, 41, 42, 45, 46, 48, 49, 51, 54, 55, 65, and

70, but did not provide any citations in support of their factual assertions. Accordingly, the

unsupported factual references in these responses is stricken and those paragraphs are deemed

admitted.

## II.     The Federal Takings Claim (Count V)

The Murphys claim that the Village and the Township are liable for unconstitutional

takings under article 1, section 15 of the Illinois Constitution and the Fifth and Fourteenth

Amendments of the United States Constitution because of the permanent nature of the damage

caused by the flooding at their property. Ill. Const. art. I, § 15; U.S. Const. amend. V. Although

the provisions both guard against unlawful takings, this court will address only the federal

constitutional claim.[4] The federal takings clause provides that "private property [shall not] be

---

[4] The takings clause in the Illinois Constitution is broader than its federal counterpart because it
also protects against damage to property. *See Int'l Coll. of Surgeons* v. *City of Chicago*, 153 F.3d 356,
363 (7th Cir. 1998) ("The greater protection provided by the Illinois Takings Clause stems from the fact
that the clause not only guards against a governmental taking of private property but also guards against
governmental 'damage' to private property.") (quoting Ill. Const. art. I, § 15).

taken for public use, without just compensation." U.S. Const. amend. V. "The Takings Clause is designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Ark. Game & Fish Cmm'n* v. *United States*, 133 S. Ct. 511, 518 (2012) (internal quotation marks omitted). A taking occurs when the government uses its property in such a way that destroys private property. *Stop the Beach Renourishment, Inc.* v. *Fl. Dept. of Env. Prot.*, 130 S. Ct. 2592, 2601, 177 L. Ed. 2d 184 (2010). Government action that results in a permanent physical occupation[5] of private land constitutes a *per se* taking. *Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 428, 102 S. Ct. 3164, 73 L. Ed. 2d 868 (1982).

The Village and the Township rely on in *Sanguinetti* v. *United States*, 264 U.S. 146, 149, 44 S. Ct. 264, 68 L. Ed. 608 (1924), for the proposition that a taking resulting from flooding must be "an actual, permanent invasion of the land." In *Arkansas Game and Fish Commission* v. *United States*, 133 S. Ct. 511, 519 (2012), however, the Supreme Court held that "government-induced flooding of limited duration may be compensable." *Id.* at 519. The Court reasoned that "[f]looding cases, like other takings cases, should be assessed with reference to the particular circumstances of each case, and not by resorting to blanket exclusionary rules." *Id.* at 521 (internal quotation marks omitted). Relevant factors in this inquiry include (1) the time of the temporary physical invasion, (2) whether the invasion is intended or the foreseeable result of authorized government action, (3) the property owner's reasonable investment-backed expectations regarding the land's use, and (4) the severity of the interference. *Id.* at 522–23.

---

[5] Regulations that have the effect of permanently depriving a property owner of all beneficial use of his or her land also constitutes a taking. *See Ark. Game & Fish*, 133 S. Ct. at 518 (citing *Lucas* v. *S.C. Coastal Council*, 505 U.S. 1003, 1019, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992)). The Murphys focus on the physical intrusion onto their land to substantiate their takings claim.

At the threshold, however, the court must determine whether the claim is ripe.[6]  In

*Williamson County Regional Planning Commission* v. *Hamilton Bank of Johnson County*, 473

U.S. 172, 186, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985), the Supreme Court created a special

ripeness doctrine for claims arising under the takings clause.  The Court held that a plaintiff

property owner must first seek and have been denied compensation under state court procedures

before seeking redress under the federal takings clause.  *Id*. at 190–191, 194– 195.[7]  The

Murphys allege in their amended complaint that they made a demand on the various defendants

before filing the lawsuit.  Making a demand, however, is not the same as an adverse judicial

decision and does not satisfy the *Williamson County* exhaustion requirement.  *See Rockstead* v.

*City of Crystal Lake*, 486 F.3d 963, 965 (7th Cir. 2007) ("[U]nless and until the state courts turn

[the plaintiff] down, [the plaintiff's] right to just compensation has not been infringed.").  The

Village and the Township argue that the Murphys sought compensation in state court by bringing

a state law takings claim.  The fact remains, however, that an Illinois state court never denied the

---

[6]  The court requested additional briefing to determine whether it has jurisdiction over the Murphy's federal takings claim.  The Village and the Township submitted additional briefs arguing that this claim is ripe for the court's review.  They argue that *Williamson County* is a ripeness doctrine that is a prudential hurdle but not a constitutional limitation on the court's jurisdiction.  *See Stop the Beach*, 130 S. Ct. at 2610; *Suitum* v. *Tahoe Reg. Planning Agency*, 520 U.S. 725, 733–34, 117 S. Ct. 1659, 137 L. Ed. 2d 980 (1997).  Although ripeness "is drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction[,]" *Reno* v. *Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18, 113 S. Ct. 2485, 125 L. Ed. 2d 38 (1993), the prudential nature of the test does not give "the lower federal courts license to disregard" it.  *Peters* v. *Vill. of Clifton*, 498 F.3d 727, 734 (7th Cir. 2007).

[7]  As explained by the Seventh Circuit, the Supreme Court in *Williamson County* articulated a two-part test for analyzing whether a takings claim is ripe.  First, the plaintiff must receive a final decision from the relevant governmental entity.  *Forseth* v. *Vill. of Sussex*, 199 F.3d 363, 372 (7th Cir. 2000) (citing *Williamson Cnty.*, 473 U.S. at 186–87).  Second, the plaintiff must show that he or she exhausted state remedies seeking just compensation before filing suit.  *Id*. (citing *Williamson Cnty.*, 473 U.S. at 194).  Takings that involve "physical invasions" (as alleged here) constitute a "final decision" and satisfy the first prong of the test.  *Greenfield Mills, Inc.* v. *Macklin*, 361 F.3d 934, 958 (7th Cir. 2004).  The court thus focuses its analysis on the second prong of that test, whether the Murphys exhausted their remedies under state law.

Murphys just compensation and their federal takings claim is thus unripe under the rationale of *Williamson County*.[8]

The Village and the Township additionally contend that they waived any right to challenge the ripeness of the Murphys' federal takings claim by removing this case to federal court. They rely on the Seventh Circuit's opinion in *Key Outdoor Incorporated* v. *City of Galesberg*, 327 F.3d 549, 550 (7th Cir. 2003), for the proposition that a defendant "surrendered the benefit of *Williamson*" when removing a matter containing a takings claim from state court to federal court.

In *Key Outdoor*, the plaintiffs filed suit in state court alleging, *inter alia*, federal and state takings claims after the defendant enacted an ordinance banning outdoor signs. *Key Outdoor*, 327 F.3d at 549. The defendant argued that its decision to defer enactment of the ordinance allowed the plaintiffs to profit from their signs in the interim (a theory of recovery called amortization), which constituted just compensation. *Id*. The defendant removed the case to federal court and filed a motion to dismiss that the district court granted with prejudice. *Id*. at 550. The Seventh Circuit vacated the district court's ruling and instructed the district court to remand the matter to state court because the outright dismissal left the plaintiffs' takings claims unadjudicated. *Id*. The Seventh Circuit held that "[w]hen the City removed the suit to federal

---

[8] The Court in *Williamson County* articulated an exception to this exhaustion requirement. A plaintiff landowner need not seek relief through a state court proceeding if such procedures were "unavailable or inadequate." *Williamson Cnty.*, 473 U.S. at 197. Such is not the case here because Illinois law provides the mechanism for an aggrieved property owner to receive just compensation. 735 ILL. COMP. STAT. 30/10-5-5. Under Illinois law, a landowner can institute an inverse condemnation proceeding to recover compensation for government action resulting in a taking of their property. *Lamar Whiteco Outdoor Corp.* v. *City of W. Chicago*, 823 N.E. 2d 610, 622, 355 Ill. App. 3d 352, 291 Ill. Dec. 318 (Ill. App. Ct. 2005). The purpose of an inverse condemnation proceeding is to determine whether a taking occurred, and if so, to fix the amount of just compensation. 735 ILL. COMP. STAT. 30/10-5-5.

court, and frustrated plaintiffs' effort to invoke state remedies, it logically either surrendered the benefit of *Williamson or consented in advance to the remand of state-law theories, so that the process required by Williamson could run its course.*" *Id.* at 550 (emphasis added). Only state law theories remained regarding whether there was a taking and, if so, whether amortization constituted just compensation. *Id.* at 550–51. The state court's resolution of those issues would render the takings claim ripe for resolution thus satisfying *Williamson County*. *Id.* at 551.

Under *Key Outdoor*, this court may consider whether the Murphys' federal takings claim is ripe notwithstanding the Village and the Township's alleged waiver. In *Key Outdoor*, the Seventh Circuit acknowledged that a defendant may waive its *Williamson County* argument when removing a case to federal court, but the court must still conduct its own *Williamson County* inquiry. *Key Outdoor*, 327 F.3d at 550; *accord Koscielski* v. *City of Minneapolis*, 435 F.3d 898, 903 (8th Cir. 2006) ("[The plaintiff] suggests because the case was removed, the City should be required to waive its ripeness challenge. [The plaintiffs'] argument, however, would require the Court to refuse to consider whether it has subject matter jurisdiction over the case and is therefore untenable."); *Sandy Creek Investors, Ltd.* v. *City of Jonestown*, 325 F.3d 623, 626 (5th Cir. 2003) (the federal takings claim was not ripe when the case was removed to federal court warranting remand to the state court). Courts within this circuit have also remanded federal takings claims to state court based on *Williamson County* even though those cases were initially filed in state court and removed to federal court. *See Gardner* v. *City of Chicago*, No. 11 C 7792, 2012 WL 716926, at *3 (N.D. Ill. Mar. 2, 2012); *Del-Prairie Stock Farm, Inc.* v. *Cnty. of Walworth*, 572 F. Supp. 2d 1031, 1034 (E.D. Wis. 2008); *Lomnicki Family LLC* v. *City*

10

*of Elmhurst*, No. 04 C 6582, 2006 WL 250700, at *3 (N.D. Ill. Jan. 31, 2006); *Vigilante* v. *Vill. of Wilmette*, 88 F. Supp. 2d 888, 890 (N.D. Ill. 2000).

The effect of *Williamson County* is that it forces parties to exhaust all avenues of relief in a state forum before bringing a takings claim in a federal court. Courts have acknowledged that this requirement is draconian. *See Stop the Beach*, 130 S. Ct. at 2618 (Kennedy, J., concurring) ("Until *Williamson County* is reconsidered, litigants will have to press most of their judicial takings claims before state courts, which are presumptively competent . . . to adjudicate claims arising under the laws of the United States.") (internal quotation marks omitted); *San Remo Hotel, L.P.* v. *City & Cnty. of San Francisco, Cal.*, 545 U.S. 323, 352, 125 S. Ct. 2491, 162 L. Ed. 2d 315 (2005) (Rehnquist, C.J., concurring) ("I joined the opinion of the Court in *Williamson County*. But further reflection and experience lead me to think that the justifications for its state-litigation requirement are suspect, while its impact on takings plaintiffs is dramatic. . . . In an appropriate case, I believe the Court should reconsider whether plaintiffs asserting a Fifth Amendment takings claim based on the final decision of a state or local government entity must first seek compensation in state courts."). This court, however, must adhere to *Williamson County* as it remains good law. The court concludes that the Murphys' federal takings claim is premature because they have not been denied just compensation by an Illinois state court. Count V is thus dismissed without prejudice.

## III. The § 1983 Claim (Count VII)

The Murphys argue that the Village is liable under 28 U.S.C. § 1983 for depriving them of their "inalienable right to be free from government harassment and intimidation." Am. Compl. 16. This count stems from the Village's decision to prosecute the Murphys for operating

their ATVs allegedly as retribution for complaining to the Village about their flooding issues.

The Village responds that the Murphys' § 1983 claim seeks redress for malicious prosecution.

The Murphys cannot bring a claim for malicious prosecution under § 1983 because state law

provides this remedy. *See Newsome* v. *McCabe*, 256 F.3d 747, 750 (7th Cir. 2001) ("[T]he

existence of a tort claim under state law knocks out any constitutional theory of malicious

prosecution."). The Murphys, however, contend that they premised their § 1983 claim on a

class-of-one equal protection violation. They argue that the Village targeted them in bringing

the prosecution and that no other residents received ordinance violations for operating ATVs on

the Com Ed easement.

The equal protection clause of the Fourteenth Amendment protects "'the right to be free

from invidious discrimination in statutory classifications and other governmental activity.'"

*Nabozny* v. *Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996) (quoting *Harris* v. *McRae*, 448 U.S. 297,

322, 100 S. Ct. 2671, 65 L. Ed 2d 784 (1980)). A plaintiff may bring suit under § 1983 "[w]hen

a state actor turns a blind eye to the Clause's command." *Id.* To succeed on a class-of-one

claim, the Murphys must show that they were "(1) intentionally treated differently from others

similarly situated and that there is no rational basis for that treatment, or (2) that the government

is treating similarly situated individuals differently because of a totally illegitimate animus for

the plaintiff." *Aida Food & Liquor, Inc.* v. *City of Chicago*, 439 F.3d 397, 402–03 (7th Cir.

2006) (internal quotation marks omitted); *Del Marcelle* v. *Brown Cnty. Corp.*, 680 F.3d 887, 899

(7th Cir. 2012) (en banc) (4-1-5 split decision) (Posner, J., leading opinion) ("The plaintiff must

plead and prove *both* the absence of a rational basis for the defendant's actions *and* some

improper personal motive (which need not be hostility, but could be, for example, corruption) for the differential treatment.") (emphasis in original).

Under the rational basis test, a non-invidiously-based classification does not violate the equal protection clause if it is rationally related to a legitimate governmental purpose. *Heller* v. *Doe*, 509 U.S. 312, 319–320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993). Prosecutors have wide discretion in bringing criminal charges and a person challenging that discretion bears a heavy burden in showing that the decision was irrational. *United States* v. *Moore*, 543 F.3d 891, 899–900 (7th Cir. 2008); *Del Marcelle*, 680 F.3d at 916 ("Critically for present purposes, even irrationality is not a ground on which prosecutorial discretion may be challenged . . . there is no place for a class-of-one equal protection theory directed against prosecutorial decisionmaking.") (Wood, J. dissenting) (citations omitted).

The Murphys' claim boils down to a challenge to prosecutorial discretion. Meyers's discretion to bring charges (misguided as it may have been in hindsight) served a government interest by enforcing local law. The rational basis test thus dooms the Murphys' class-of-one claim. *See Avila* v. *Pappas*, 591 F.3d 552, 554 (7th Cir. 2010) ("[C]lass-of-one claims cannot rest on governmental activity that is discretionary by design, a good description of prosecutorial selectivity in criminal law.") (citation omitted); *Moore*, 543 F.3d at 900 ("[B]ecause a no-rational-basis challenge to the exercise of prosecutorial discretion is doomed to failure, [the defendant's] class-of-one argument is foreclosed for this reason as well."). The Village's motion for summary judgment on count VII is granted.[9]

---

[9] The Murphys' policy claim against the Village under *Monell* rests on allegations that they were wrongly prosecuted in violation of the equal protection clause. Am. Compl. ¶¶ 44-53. The failure of that claim dooms the *Monell* claim.

**IV.**      **The Illinois State Law Claims:  (Counts I, II, III, and IV)**

The Murphys' remaining claims are common law claims of intentional trespass, willful and wanton conduct, and negligent trespass.  Where, as here, this case must be remanded for adjudication of the Illinois constitutional claim, the remaining common law claims must go with it.  The court, in its discretion, declines to exercise jurisdiction over counts I, II, III and IV.  *See* 28 U.S.C. § 1367(c).

## CONCLUSION AND ORDER

The Village's motion for summary judgment [dkt. 123] with respect to counts VII and VIII is granted.  The court lacks jurisdiction to decide the federal takings claim (Count V) based on lack of ripeness and therefore remands the case (Counts I-IV) pursuant to 28 U.S.C. § 1447(c).

Dated:     January 16, 2013            Enter:     *Joan N. Lefkow*
                                           JOAN HUMPHREY LEFKOW
                                        United States District Judge